**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

R. MORENO, in his individual
capacity and in his capacity as
representative of the classes
described fully herein,
                    *Plaintiff-Appellee,*

            v.

LEROY BACA; MICHAEL
ANTONOVICH; YVONNE BURKE;
DONALD KNABE; GLORIA MOLINA;
ZEV YAROSLAVSKY,

                    *Defendants,*

            and

BANKS, Deputy Sheriff #403862;
GARCIA, Deputy Sheriff #412525,
            *Defendants-Appellants,*

STATE OF CALIFORNIA,
            *Intervenor-on-Appeal.*

No. 02-55627

D.C. No.
CV 00-07149 ABC

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
April 9, 2003—Pasadena, California
Submission Withdrawn October 8, 2003
Resubmitted February 16, 2005

Opinion Filed March 7, 2005
Opinion Withdrawn and Amended Opinion
Filed December 9, 2005

16097

Before: Harry Pregerson, A. Wallace Tashima, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Tashima

## COUNSEL

Devallis Rutledge, Manning & Marder Kass, Ellrod, Ramirez, Irvine, California, for the defendants-appellant.

Kathryn S. Bloomfield, Yagman & Yagman & Reichmann & Bloomfield, Venice Beach, California, for the plaintiff-appellee.

Doris A. Calandra, Deputy Attorney General, Sacramento, California, for the intervenor-on-appeal.

## ORDER

The Opinion and separate Opinion concurring in the judgment filed on March 7, 2005, slip op. 2657 and 2687, and reported at 400 F.3d 1152 and 1169, are withdrawn and replaced by the Amended Opinion filed concurrently with this order.

The foregoing action renders defendants-appellants' petition for rehearing and petition for rehearing en banc, and intervenor-on-appeal State of California's petition for rehearing and/or petition for rehearing en banc moot. Subsequent petitions for panel rehearing and/or petitions for rehearing en banc may be filed with respect to the Amended Opinion in accordance with the requirements of Fed. R. App. P. 40 and 35.

## OPINION

TASHIMA, Circuit Judge:

Los Angeles County Deputy Sheriffs Sean Banks and Thomas Garcia ("Appellants") appeal from the district court's denial of their motion for summary judgment asserting qualified immunity in a § 1983 action brought by plaintiff Richard Moreno. Moreno alleges that Appellants, acting under color of state law, deprived him of his constitutional rights when they arrested and searched him without cause. We affirm.

## Factual Background

One evening in January 2000, Richard Moreno and his companion Joe Rodriguez were on their way to a meeting at St. Lucy's Church in the City Terrace area of Los Angeles. After their car broke down, Moreno and Rodriguez proceeded toward the meeting on foot. At approximately 7 p.m., a

marked Los Angeles County Sheriff patrol car passed them as they walked down the street, made a U-turn, and pulled the car onto the curb in their path. Two deputies got out of the car. Deputy Banks, who was riding in the passenger seat, ordered Moreno and Rodriguez to approach. Banks interrogated both men as to their business in the area, patted them down for weapons, emptied the contents of their pockets onto the hood of the patrol car, and locked them into the back seat. While Moreno and Rodriguez sat in the back seat of the car, Deputy Banks entered their names into a computer inside the patrol car and asked the men whether they were on parole. Moreno admitted that he was.

Meanwhile, Deputy Garcia, the driver of the patrol car, walked down the sidewalk in the direction from which Rodriguez and Moreno had approached, shining his flashlight on the sidewalk and into nearby yards as he went. When Garcia returned to the patrol car he had a discussion with Banks, reached into the glove compartment to retrieve a ziploc bag, and then put the bag back into the glove compartment and closed the door. Moreno heard one of the deputies tell the other that Rodriguez was "clean" but that Moreno was on parole. At that point, Garcia opened the rear door of the car and told Rodriguez that he was free to leave, which he did. Moreno was handcuffed and told that he was under arrest for violating his parole. When Moreno asked the deputies what he had done to violate his parole, one of them told him that he was caught in possession of rock cocaine.

Deputies Banks and Garcia gave a somewhat different account of the incident. According to their incident report, Banks noticed that Moreno was "startled" when he saw the patrol car. As the deputies approached, Moreno turned around, reached into his right front pants pocket, and discarded something on the front steps of a nearby residence. Because the deputies were on patrol in a high crime area, and because they were aware that drugs were sold in several houses nearby, they decided to investigate. They detained

Moreno and placed him in the patrol car. Banks walked to the area in which he had seen Moreno discard the object and recovered an object he recognized as rock cocaine. One of the deputies did a warrant check on the patrol car's MDT terminal, which revealed an outstanding arrest warrant with $10,000 bail for Moreno.[1] The MDT search also revealed that Moreno was on parole, a fact which Moreno orally confirmed. Both deputies declared under oath that they were aware from their training and experience that a standard term of parole was that parolees were subject to warrantless searches by any peace officer. Moreno was placed under arrest, both for possession of cocaine and under the authority of the outstanding arrest warrant, and a parole hold was placed on him. Although the incident report makes no reference to Rodriguez or any other person, both Banks and Garcia refer to "another man" in their sworn declarations describing the encounter.

At the time of the detention, Moreno was indeed a parolee under the supervision of the California Department of Corrections. He had been released from prison more than two years earlier, subject to the following condition: "You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer." Moreno also had an outstanding arrest warrant, which was issued when Moreno failed to make an appearance in state court in 1999. It is undisputed, however, that the deputies learned that Moreno was on parole and that he had an outstanding arrest warrant only after searching and detaining him.

Moreno was subsequently charged in state court with possession of a controlled substance. Deputies Banks and Garcia testified against him at trial and Rodriguez testified for the defense. Moreno was acquitted by a jury in 2002.

[1]An MDT terminal gives deputy sheriffs access to certain criminal records, and can alert officers to the possibility of outstanding arrest warrants.

Moreno then brought this action under 42 U.S.C. § 1983, contending that Banks and Garcia violated his Fourth Amendment right to be free from unreasonable searches and seizures when they arrested and searched him without cause. Banks and Garcia responded that Moreno had no right to be free from suspicionless arrests and searches because of the outstanding bench warrant and the parole condition. Even if reasonable suspicion were required to detain Moreno, the officers contended, they had the requisite level of suspicion because of Moreno's nervous behavior and the fact that he was walking in a "high crime" area.

The district court sided with Moreno, reasoning that under *Griffin v. Wisconsin*, 483 U.S. 868 (1987), and *United States v. Knights*, 534 U.S. 112 (2001), "at least reasonable suspicion is required to justify the search, and subsequent seizure, of Moreno." The court further held that, interpreting the facts in the light most favorable to Moreno, the facts "do not come close to the level of suspicion that existed in *Knights* and *Griffin*." It rejected the deputies' argument that Moreno's parole search condition and the outstanding arrest warrant retroactively justified the arrest and search even though neither Banks nor Garcia was aware of either circumstance at the time. The court denied the deputies' motion for summary judgment on qualified immunity grounds, holding that Moreno's constitutional right to be free from suspicionless searches was "clearly established" at the time of the detention, and that a suspect's nervousness at the sight of law enforcement, by itself, did not give rise to reasonable suspicion.

The deputies brought this interlocutory appeal of the district court's denial of summary judgment on qualified immunity grounds. We have jurisdiction over the appeal, but only to the extent that it presents legal questions. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001) ("Our jurisdiction [to review the denial of qualified immunity] generally is limited to questions of law and does not extend to claims in which the determina-

tion of qualified immunity depends on disputed issues of material fact.").

**I**

We review the district court's denial of a motion for summary judgment de novo. *Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002). "[T]he ordinary framework for deciding motions for summary judgment" applies to motions for summary judgment based on official immunity. *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004). Because the moving defendant bears the burden of proof on the issue of qualified immunity, he or she must produce sufficient evidence to require the plaintiff to go beyond his or her pleadings. *Id.* The defendant's burden is to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**[1]** The determination of whether a law enforcement officer is entitled to qualified immunity involves a two-step analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In the first step we must view the record in the light most favorable to the party asserting injury in determining whether the officer's conduct violated a constitutional right. *Id.* If the plaintiff establishes the violation of a constitutional right, we must next consider whether that right was clearly established at the time the alleged violation occurred. *Id.* The contours of the right must have been clear enough that a reasonable officer would have understood that what he or she was doing violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

We may affirm the district court on any basis supported by the record. *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 418 (9th Cir. 1998).

## II

Appellants first contend that Moreno had no Fourth Amendment rights that could have been violated by virtue of the parole condition allowing warrantless searches of his person, residence, and property. Second, they contend that the arrest and search were justified by the parole search condition and the outstanding arrest warrant, despite the fact that the deputies did not know of either fact at the time. Because we reject the second contention, we need not reach the first.

### A.  Did the Existence of Either the Parole Condition or the Outstanding Bench Warrant Retroactively Justify the Arrest and Search?

Appellants argue that the search was reasonable under the Fourth Amendment because Moreno was on parole and because there was an outstanding misdemeanor warrant for Moreno's arrest. First, we assume without deciding that the conditions under which Moreno was stopped, searched, and detained were such as to justify a parole search and detention, had the officers known that Moreno was on parole before acting. Second, we also assume that the existence of an arrest warrant could have rendered Moreno's arrest "reasonable" and that a search incident to a lawful arrest would have been permissible under *United States v. Robinson*, 414 U.S. 218, 235 (1973). It is undisputed, however, that Deputies Banks and Garcia were not aware of Moreno's parole status or of the outstanding arrest warrant at the time of the seizure. Thus, we must confront the question of whether a search or seizure can be considered "reasonable" if the facts that rendered the search "reasonable" (in this case, the parole status and outstanding arrest warrant) were unknown to the officer at the time of the intrusion. We hold that it cannot.

[2] It is well established that under the Fourth Amendment, to arrest a suspect on probable cause, the "facts and circumstances within the officer's knowledge [must be] sufficient to

warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him." *Scott v. United States*, 436 U.S. 128, 137 (1978); *see also Ornelas v. United States*, 517 U.S. 690, 696 (1996) ("We have described reasonable suspicion simply as 'a particularized and objective basis' for suspecting the person stopped of criminal activity, and probable cause to search as existing where the *known facts and circumstances* are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.") (emphasis added) (citation omitted); *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (holding that "factual determinations bearing upon search and seizure" must be judged against an "objective standard" based on "facts available to the officer at the moment").**²**

[3] In *United States v. Luckett*, 484 F.2d 89 (9th Cir. 1973) (per curiam), we held that a police officer's knowledge that

---

**²**See also Thacker v. City of Columbus*, 328 F.3d 244, 261 (6th Cir. 2003); *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) ("Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.") (emphasis added); *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) ("In assessing the existence of probable cause, courts examine the totality of the circumstances known to the officer *at the time of the arrest*.") (emphasis added). Indeed, in addressing the converse situation, in which law enforcement officers arrested a man because they reasonably believed that an outstanding arrest warrant existed when in fact it did not, the Supreme Court found that the seizure was "reasonable" (for the purpose of applying the "good faith" exception to the exclusionary rule) precisely because it was justified based on the facts known to the officers at the time. *United States v. Leon*, 468 U.S. 897, 926 (1984).

a man was subject to an outstanding bench warrant, which he acquired only after unlawfully seizing the man, did not retroactively render the seizure of that man "reasonable" under the Fourth Amendment. *Id.* at 90-91. In that case, the officer spotted a man jaywalking and summoned him to his police car. After reviewing the man's identification, the officer detained the man long enough to write a jaywalking citation. We held that the temporary seizure during which the police checked the man's identification and wrote the citation was reasonable under the Fourth Amendment because it was " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Id.* at 90 (quoting *Terry*, 392 U.S. at 16, 19). But the officer continued to detain the man after the citation was written for the sole purpose of running a warrant check on him. The warrant check turned out positive, and the officer arrested him on that basis. A search incident to that arrest revealed a package of counterfeit money orders. We held that the detention of the man for the purpose of running the warrant check was "unreasonable," and the evidence was properly suppressed at trial, because at the time it was conducted, the officer "had no reasonable grounds to be suspicious that there might be a warrant outstanding against him." *Id.* at 91; *see also United States v. Johnson*, 256 F.3d 895, 903 (9th Cir. 2001) (en banc) (Ferguson, J., joined by Schroeder, Pregerson, and Paez, JJ.) ("We have never held that an officer lacking any prior objective knowledge of the use of an outbuilding may approach it free of Fourth Amendment constraints."); *United States v. DiCesare*, 765 F.2d 890, 899 (9th Cir. 1985) ("[T]he acquisition of probable cause during an unlawful seizure does not cure the illegality and does not constitute an independent source of probable cause."), *amended by* 777 F.2d 543 (9th Cir. 1985).

**[4]** Appellants cite to *Whren v. United States*, 517 U.S. 806 (1996), for the proposition that the underlying intent or motivation of the police is irrelevant for Fourth Amendment search and seizure purposes. *Id.* at 813. But *Whren* held only that the illegitimate subjective motivation of a police officer

will not invalidate an *otherwise constitutional seizure* that is "objectively justifiable" based on facts known to the officer. *Id.*; *see also United States v. Cervantes*, 219 F.3d 882, 890 (9th Cir. 2000) ("It is important to remember that the foundation of the Court's position in *Whren* is that 'where the search or seizure is based upon probable cause' there is with rare exception no balancing to be done or reasonableness determination to be made because the probable cause itself serves as the exclusive 'measure of the lawfulness of enforcement.' ") (quoting Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 1.4 (3d ed. 1996) (footnote omitted)); *United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000) ("The fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop."). In other words, although *Whren* stands for the proposition that a pretextual seizure based on the illegitimate subjective intentions of an officer may be permissible, it does not alter the fact that the pretext itself must be a constitutionally sufficient basis for the seizure and the facts supporting it must be known at the time it is conducted. *Whren*, 517 U.S. at 813. In this case, as in *Luckett*, it is undisputed that Appellants were not aware of the fact that Moreno was subject to an outstanding arrest warrant at the time they arrested him. Therefore, there are no facts from which we can conclude that the suspicionless arrest and search in this case were objectively justifiable.

Appellants' reliance on cases dealing with one's "standing" to bring a Fourth Amendment challenge, *Minnesota v. Carter*, 525 U.S. 83 (1998), *United States v. Padilla*, 508 U.S. 77 (1993), and *Rawlings v. Kentucky*, 448 U.S. 98 (1980), is likewise unavailing. In each of those cases, there was a question as to whether the person challenging the search had standing because he or she lacked a legitimate expectation of privacy in the place searched or the thing seized. *See Carter*, 525 U.S. at 91 (holding that respondent lacked standing to bring Fourth Amendment challenge based on police search of another person's home because respondent had no expectation of privacy

therein); *Padilla*, 508 U.S. at 81-82 (remanding for factual determination as to whether petitioner had a legitimate privacy interest in a seized automobile in which he had no ownership interest and was not a passenger); *Rawlings*, 448 U.S. at 105-06 (holding that petitioner could not challenge the search of another person's purse because he lacked a reasonable expectation of privacy therein). By contrast, there is no question that Moreno had standing to challenge the search and seizure of his own person. *See Terry*, 392 U.S. at 9 ("No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.") (quoting *Union Pac. Ry. v. Botsford*, 141 U.S. 250, 251 (1891)).

**[5]** All that we have said above with respect to the necessity that the officers know of the existence of a warrant before they can make an arrest pursuant to that warrant applies with equal force to a parole condition — an officer must know of a detainee's parole status before that person can be detained and searched pursuant to a parole condition. In fact, the California Supreme Court has recently so held. *People v. Sanders*, 93 P.3d 496, 505 (Cal. 2003) (holding that the "police cannot justify an otherwise unlawful search of a residence because, unbeknownst to the police, a resident of the dwelling was on parole and subject to a search condition").

**[6]** For all of these reasons, we hold that police officers cannot retroactively justify a suspicionless search and arrest on the basis of an after-the-fact discovery of an arrest warrant or a parole condition.

## B. Were the Constitutional Rights at Issue Clearly Established?

**[7]** Having established that Appellants violated Moreno's constitutional rights when they conducted the suspicionless

search and seizure, we must evaluate whether those rights were clearly established at the time of the incident and whether the "unlawfulness [of Appellants' conduct] was apparent in light of preexisting law." *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995).

> It is not necessary that the alleged acts have been previously held unconstitutional, as long as the unlawfulness [of defendants' actions] was apparent in light of preexisting law. Closely analogous preexisting case law is not required to show that a right was clearly established. In other words, while there may be no published cases holding similar policies constitutional, this may be due more to the obviousness of the illegality than the novelty of the legal issue.

*Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002). "[W]hen an officer's conduct 'is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established.' " *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th Cir. 2001)).

Deputies Banks and Garcia detained and searched Moreno based on his nervous behavior when he spotted the patrol car in an area known for high crime.[3] They contend that their actions were justified (1) because, as a result of Moreno's parole status and his outstanding arrest warrant, no level of suspicion was required in order to arrest and search him, and (2) even if reasonable suspicion was required to search

---

[3]Because we view the facts in the light most favorable to the nonmoving party, we do not consider the officers' contention, which Moreno denies, that Moreno removed an object from his pocket and placed it on the ground.

Moreno, the officers had reasonable suspicion based on Moreno's nervous behavior in a high crime area. Both contentions are untenable.

Appellants' first argument in favor of qualified immunity — that it was not clearly established that Moreno had any right to be free from suspicionless searches because of his parole status and his outstanding arrest warrant — relies on the two alternate assertions discussed above, both of which must fail. When evaluating whether a law enforcement officer was on notice that his conduct was unlawful in a particular instance, we look only to the "circumstances presented to [the] officer." *Saucier*, 533 U.S. at 209. The "relevant, dispositive inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" *Id.* at 202 (emphasis added).

**[8]** Appellants' first assertion — that the parole search condition stripped Moreno of "a normal scope of Fourth Amendment protection" — does not justify the suspicionless search and seizure. While Moreno's parole status may have rendered it unclear what level of suspicion was required to conduct such a warrantless search, if Appellants had known of the parole condition at the time of the search and seizure, it is uncontested that this fact was unknown to Appellants at the time of their actions and was not a fact on which Appellants relied. Because the Deputies did not know of Moreno's parole status and his outstanding arrest warrant at the time they searched and seized him, those circumstances cannot justify their conduct. At the time of the incident in this case, it was clearly established that the facts upon which the reasonableness of a search or seizure depends, whether it be an outstanding arrest warrant, a parole condition, or any other fact, must be known to the officer at the time the search or seizure is conducted. *Rodriguez*, 497 U.S. at 188; *Luckett*, 484 F.2d at 90-91.

**[9]** Appellants' other argument — that the officers reasonably believed that the facts known to them constituted "rea-

sonable suspicion" — is also unpersuasive. It was well-established at the time of Moreno's detention that nervousness in a high crime area, without more, did not create reasonable suspicion to detain an individual. In *Chavez-Valenzuela*, 268 F.3d at 725, we noted that although the Ninth Circuit had not yet ruled on whether nervousness alone constitutes reasonable suspicion, the Sixth, Seventh, and Eleventh Circuit had concluded (prior to 2000) that appearing nervous is only one of several factors for finding reasonable suspicion. *See United States v. Hill*, 195 F.3d 258, 272 (6th Cir. 1999); *United States v. Finke*, 85 F.3d 1275, 1280 (7th Cir. 1996). We also noted that "no circuit has held that nervousness alone suffices to create reasonable suspicion." *Chavez-Valenzuela*, 268 F.3d at 726; *see also Brown v. Texas*, 443 U.S. 47, 52 (1979) (holding that officers did not have reasonable suspicion for an investigatory stop when they detained two men who were walking away from each other in an alley in an area known for drug trafficking because "the . . . activity was no different from the activity of other pedestrians in that neighborhood"). The Supreme Court has held that in some circumstances an individual's flight from law enforcement in a high crime area can justify an investigatory seizure. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). But Moreno's simple act of walking away from the officers could not have been reasonably mistaken for the type of "flight" the officers confronted in *Wardlow*. *See United States v. Valentine*, 232 F.3d 350, 357 (3d Cir. 2000) ("Walking away from the police hardly amounts to the headlong flight considered in *Wardlow* and of course would not give rise to reasonable suspicion by itself, even in a high-crime area[.]"). Interpreting all disputed issues of fact in favor of Moreno, as we must, we hold that no reasonable officer could have concluded that the circumstances confronted by Appellants in this case gave rise to "reasonable suspicion."

## CONCLUSION

For the foregoing reasons, we affirm the district court's denial of qualified immunity and remand for further proceedings.

**AFFIRMED and REMANDED.**