<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-4328**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ANTHONY JOSEPH ALLISON,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Lacy H. Thornburg, District Judge. (1:08-cr-00085-LHT-1)

Argued: September 24, 2010          Decided: October 18, 2010

Before NIEMEYER, MOTZ, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Matthew Segal, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Mark A. Jones, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Fredilyn Sison, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Edward R. Ryan, Acting United States Attorney, Charlotte, North Carolina, Amy E. Ray, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Anthony Allison appeals from an order of the district court denying his motion to suppress a gun found in a car in which he had been a passenger.  We affirm.

I.

On January 11, 2008, a police officer, Sgt. John Hamrick, spotted two men in a Ford Explorer on a residential street in Shelby, North Carolina.  Victor Jerome Wade was driving the Explorer and Allison was seated in the front seat beside him. Sgt. Hamrick, however, mistakenly thought that he recognized the driver as Zavious Wells, a man wanted for a probation violation. Sgt. Hamrick and his partner, Officer Brandon Carpenter, made a U-turn and began to follow the Explorer, with the intent to make a traffic stop.  Shortly thereafter, Wade drove the Explorer into a driveway next to, and toward the rear of, a house.  The officers parked in the driveway behind the Explorer.

Allison and Wade emerged from the Explorer and then noticed the police officers, who had also exited their vehicle.  Allison and Wade moved toward the front door of the house.  The officers approached them, and Sgt. Hamrick said to Wade, "You are not Zavious, but you are Victor."  Sgt. Hamrick later testified at the suppression hearing that he knew Wade because he had charged him in 2005 with a "driving offense" and had reason to believe

that Wade did not have a driver's license. He asked Wade whether he had a license, and Wade responded in the negative. Sgt. Hamrick patted down Wade and Allison for weapons, but found nothing. He requested Wade's consent to search the Explorer, but Wade refused on the ground that he did not own the vehicle.

Sgt. Hamrick testified that he knew that Allison had recently been released from prison, where he had been incarcerated for gun charges. Sgt. Hamrick also testified that he "reasonably felt that there was something that was in the vehicle that these two young men were trying to hide" because the Explorer had turned quickly into the driveway and proceeded to the back of the house. When three women emerged from the house shortly after the Explorer arrived, Sgt. Hamrick testified that he feared that someone might go into the Explorer and retrieve a weapon. Accordingly, Sgt. Hamrick asked Officer Carpenter and a third officer who arrived for backup support to conduct a "Terry frisk" of the Explorer. One of the officers discovered a handgun under the front passenger seat, where Allison had been seated. The officers then arrested Allison and obtained a search warrant to examine the contents of his cell phone, which revealed photographs of him holding a gun that resembled the gun seized from the vehicle.

Allison moved to suppress the gun as the product of an unlawful search and seizure. He testified at the suppression

4

hearing that he and Wade intended to visit Wade's ex-girlfriend at the house and stay for about 30 minutes. Allison claimed that he did not feel free to leave when the police arrived because he thought the officers would stop him and might try to arrest him for resisting. He acknowledged, however, that on this occasion, unlike his prior encounters with the police, the officers did not specifically do or say anything to indicate that he was not free to leave.

The district court denied Allison's motion to suppress the gun on the ground that the police did not stop the vehicle in which Allison was a passenger and Allison had no right to challenge the search of the vehicle in question. Allison then entered a conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), reserving the right to appeal the denial of his suppression motion.

## II.

To challenge the search of a vehicle, a passenger must have a reasonable expectation of privacy in the vehicle and its contents. When, as here, he does not own the vehicle and does not claim ownership of its contents, he typically does not have such an expectation. See Rakas v. Illinois, 439 U.S. 128, 148-49 (1978); United States v. Rusher, 966 F.2d 868, 874-75 (4th Cir. 1992). However, the Supreme Court has held that passengers

are seized in traffic stops, and thus may challenge the legality of such stops. Brendlin v. California, 551 U.S. 249, 258 (2007). In Brendlin, the defendant challenged only the legality of the stop, and not the subsequent search, but the Court has held that searches that are the "fruits" of seizures are subject to challenge as well. See Wong Sun v. United States, 371 U.S. 471, 484 (1963).

The parties agree that Wade drove the Explorer to its destination, parked it, and that he and Allison exited the vehicle before either of them noticed the officers. Nonetheless, Allison contends that the officers' actions amounted to a traffic stop because when the police car parked behind the Explorer in the driveway, it prevented the Explorer from leaving. Allison seeks to challenge the stop and the ensuing search as the "fruit" of the stop.

He heavily relies on the Brendlin holding that "[a] person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." 551 U.S. at 254 (internal citations and quotation marks omitted, emphasis removed). This holding, however, provides little assistance to Allison. This is so because by the time the officers pulled into the driveway, blocking the

6

Explorer, the Explorer had come to a stop, and Allison and Wade had exited it with the admitted intent to enter a house for thirty minutes. Given these facts, the inquiry must focus on Allison's rights as a pedestrian, not as a passenger.

Both the Supreme Court and this court have distinguished pedestrian stops from automotive stops, reasoning that questioning a pedestrian is significantly less intrusive than arresting the progress of an automobile. See United States v. Mendenhall, 446 U.S. 544, 556-57 (1980); United States v. Weaver, 282 F.3d 302, 312 (4th Cir. 2002) ("pedestrian encounters are much less restrictive of an individual's movements").

Indeed, Brendlin, the very case on which Allison relies to claim standing as a passenger, draws a stark contrast between individuals within a vehicle and those outside its confines: pedestrians possess a degree of physical and environmental freedom that automotive occupants lack. See Brendlin, 551 U.S. at 257 (2007) (noting that a stop of persons inside a vehicle triggers a "societal expectation of 'unquestioned police command'" (internal citations omitted)). The holding in Brendlin -- that a traffic stop seizes a passenger as well as the driver -- rests on the physical confinement of the automobile. As the Brendlin Court explained, "[a]n officer who orders one particular car to pull over acts with an implicit

claim of right . . ., and a sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of the investigation . . . ." Id. The walls of the car -- and the passenger's dependence on the driver while within those walls -- bind the car's occupants; a seizure of one is a seizure of all.

Here, by contrast, confinement in the Explorer did not limit Allison's freedom of movement at the time the officers pulled into the driveway and blocked the vehicle. Police effect a seizure only if they "terminate[] or restrain[] [an individual's] freedom of movement" "by means of physical force or show of authority." Id. at 254 (internal quotation omitted). Because the car did not limit Allison's movement at the time of the police encounter, the blocking of that car did not restrain his freedom of movement. Cf. INS v. Delgado, 466 U.S. 210, 218 (1984) (finding no seizure when INS agents obstructed exits to large factory while interrogating workers, because "workers were not prevented by the agents from moving about the factories").

III.

In summary, Allison does not have standing to contest the search of the Explorer that led to the recovery of the challenged weapon. Because Allison did not have standing to challenge the search of the Explorer and the search was not the

8

fruit of an illegal seizure of Allison, we reject Allison's contention that the district court erred in refusing to suppress the gun.  Therefore, the judgment of the district court is

AFFIRMED.