# FOR PUBLICATION



**FILED**

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOHN RAZUMICH**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DARROL FOX, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1206-CR-475 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1111-FA-79007

**January 31, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Darrol Fox brings this interlocutory appeal from the trial court's denial of his motion to suppress evidence. Fox raises two issues for our review, which we restate as the following issue: whether he has standing under either the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Indiana Constitution to challenge the State's warrantless entry into a hotel room in which Fox was an unregistered guest. We affirm.

## FACTS AND PROCEDURAL HISTORY

At about 11:00 p.m. on November 5, 2011, Detective John Howard and other officers of the Indianapolis Metropolitan Police Department went to the America's Best Inn on North High School Road to check the hotel's registry against a list of wanted suspects. The clerk at the hotel's front desk provided Detective Howard with a guest list, and he identified Cody Lange as a match with his suspect list. According to the guest list, Lange was registered to room 220.

Detective Howard received a key for room 220 from the desk clerk, and he and the other officers entered the room. Upon entering, the officers saw that the room had been occupied but was currently vacant. The officers were then approached by James Giles, a maintenance worker for the hotel. Giles informed the officers that "in [r]oom 212 there was a person sleeping on the bed and that they were [sic] not registered in the room and not supposed to be there." Transcript at 19. Giles suggested that the person in room 212 "could be the person [the officers] were looking for, and that that person was not

supposed to be . . . in that room." Id. at 20. Detective Howard confirmed that the guest registry did not show anyone registered in room 212.

Giles then told the officers that he could let them into room 212 with his key, and the officers followed Giles to room 212. At the threshold to the room, Detective Howard observed that "the door jamb was broken as if it was kicked in or had been kicked in previously." Id. at 21.[1] Giles then let the officers into the room. Inside, they found a black male asleep on the bed.

The officers woke the man and asked him who he was. The man refused to talk to the officers, and they handcuffed him and "look[ed] around the room to see if anybody else was in the room . . . [and] to locate any identification that we could find to help us figure out who this person was." Id. at 24. The officers observed items near the dresser, and the man stated, "None of this is mine, none of this is mine." Id. at 23. The officers then found photo identification identifying the man as Fox. In a drawer of the nightstand directly beside the bed, the officers found a set of digital scales that had a white powder on them.

During the course of the officers' search of the room, Fox told the officers that the manager had let him into the room. Detective Howard went to the front desk to ask the manager if that was true, and the manager confirmed that he had let Fox into the room and "didn't tell any of his staff that he had let him in." Id. at 27. The manager offered no further specifics on his permission for Fox to be in room 212, although Fox later acknowledged that he had not paid for a room, that he had told the manager he only

_____

[1] In his statement of the facts, Fox asserts, without citation to the record, that "the detectives did not notice any signs of a disturbance that would lead them to believe that the room had been broken into at that time." Appellant's Br. at 3. This statement is contradicted by Detective Howard's testimony.

needed the room "for the day," that he had been in the room since 8:00 a.m., and that the manager was doing him a "favor." Id. at 7-10.

On November 14, the State charged Fox with dealing in cocaine, as a Class A felony; possession of cocaine, as a Class B felony; possession of a narcotic, as a Class B felony; possession of a controlled substance, as a Class B felony; maintaining a common nuisance, as a Class D felony; and possession of marijuana, as a Class A misdemeanor. On April 3, 2012, Fox filed a motion to suppress the evidence seized from room 212. The court held an evidentiary hearing on Fox's motion and, thereafter, it denied his motion to suppress the evidence. The court then certified its order for interlocutory appeal, which we accepted.

## DISCUSSION AND DECISION

Fox appeals the trial court's denial of his motion to suppress. Where a party appeals the denial of its motion to suppress evidence, it appeals from a negative judgment and must show that the ruling on the motion was contrary to law. State v. Keller, 845 N.E.2d 154, 160 (Ind. Ct. App. 2006). We reverse only where the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. Id. Moreover, our standard of review for the denial of a motion to suppress evidence is similar to other sufficiency issues. Ammons v. State, 770 N.E.2d 927, 930 (Ind. Ct. App. 2002), trans. denied. We determine whether substantial evidence of probative value exists to support the trial court's denial of the motion. Id. We will not reweigh the evidence, and we consider only the evidence most favorable to the trial

4

court's ruling along with any uncontroverted evidence to the contrary. Smith v. State, 780 N.E.2d 1214, 1216 (Ind. Ct. App. 2003), trans. denied.

We agree with the State's contention that the evidence most favorable to the trial court's ruling demonstrates that Fox lacks standing to challenge the State's search of the hotel room under either the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Indiana Constitution.[2] It is well established that a defendant must have a legitimate expectation of privacy in the premises that is the subject of the search before he can challenge the search as unconstitutional. Arcuri v. State, 775 N.E.2d 1095, 1100 (Ind. Ct. App. 2002), trans. denied. "An expectation of privacy gives rise to Fourth Amendment protection where the defendant had an actual or subjective expectation of privacy and the claimed expectation is one which society recognizes." Krise v. State, 746 N.E.2d 957, 969 (Ind. 2001). Likewise, "to challenge evidence as the result of an unreasonable search or seizure under Article I, Section 11, a defendant must establish ownership, control, possession, or interest in either the premises searched or the property seized."[3] Peterson v. State, 674 N.E.2d 528, 534 (Ind. 1996). When the constitutionality of a search is challenged, defendant has the burden of demonstrating a legitimate expectation of privacy in the premises searched. Arcuri, 775 N.E.2d at 1100.

---

[2] In his Reply Brief, Fox states that the trial court did not address the issue of standing in its order. Fox is incorrect. The trial court's order was premised on the distinction between registered hotel guests, who have reasonable expectations of privacy in their rented rooms, and persons who are merely present with the consent of the registered guest. See Transcript at 55. That distinction is the crux of the standing issue.

[3] Fox's argument on appeal is focused only on his purported interests in the hotel room. He does not suggest any interest in the property seized. Accordingly, we do not consider that potential issue.

As the United States Supreme Court has held, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." Minnesota v. Carter, 525 U.S. 83, 90 (1998). Further, a person's hotel room is a "home" for Fourth Amendment purposes. Ceroni v. State, 559 N.E.2d 372, 373 (Ind. Ct. App. 1990), trans. denied.

Here, the undisputed evidence shows that Fox was an invitee of the hotel manager at the time of the officers' warrantless entry into room 212. Although Fox construes the manager's invitation as equivalent to being a registered, overnight guest, his own testimony belies his claim on appeal. At the motion to suppress hearing, Fox acknowledged that he had not paid for a room, that he had told the manager he only needed the room "for the day," that he had occupied the room that morning, and that the manager was doing him a "favor." Transcript at 7-10.

Fox has not met his burden of demonstrating that the trial court's interpretation of those facts is contrary to law. See Arcuri, 775 N.E.2d at 1100. To the contrary, Fox's own testimony, when viewed in the light most favorable to the trial court's judgment, shows that Fox was merely present in the hotel room with the consent of the hotel manager and that Fox was not an overnight guest in room 212. Accordingly, he does not have standing under the Fourth Amendment to challenge the officers' warrantless entry into the room. Likewise, he does not have standing under Article I, Section 11. Thus, we affirm the trial court's denial of Fox's motion to suppress.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.

6