# CIRCUIT COURT OF BUCHANAN COUNTY

Commonwealth of Virginia

    v.

Charles Ryan Fuller

Case Nos. 118-11, 119-11, 120-11, 121-11

Commonwealth of Virginia

    v.

David Shaun Fuller

Case Nos. 122-11, 123-11, 124-11, 125-11

June 9, 2014

BY JUDGE PATRICK R. JOHNSON

The above-styled case is now before the Court following Defendants' *Nusbaum* and *Riner* Petition for Reconsideration. The parties have provided the Court with substantial written briefs on the issues surrounding the instant Motion to Suppress, and the parties convened for two oral hearings, on November 7, 2012, and March 26, 2014. In light of the arguments raised at both hearings, the Court makes the following ruling.

"[I]t is a cardinal principal that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment'." *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412, 57 L. Ed. 2d 290 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576 (1967)); see also *Vass v. Commonwealth*, 214 Va. 740, 743, 204 S.E.2d 280, 283 (1974). In the present case, it is without question that Officer Childress' conduct on the curtilage of the property without a warrant is a search within the meaning of the Fourth Amendment. Cf. *California v. Ciraolo*, 476 U.S. 207, 212-13, 106 S. Ct. 1809, 1812, 90 L. Ed. 2d 210 (1986); *Jefferson v. Commonwealth*, 27 Va. App. 1, 15-16, 497 S.E.2d 474, 481 (1998). Therefore, admissibility of the challenged evidence in each case turns on three issues: (i) whether the defendant had a legitimate expectation of privacy, i.e. Fourth Amendment standing, in the area searched, (ii) whether Officer Childress' warrantless search was reasonable, and (iii) if a defendant had a legitimate expectation of privacy and the search was unreasonable, whether the exclusionary rule should be applied to exclude the evidence derived from the unconstitutional conduct.

## I. *Fourth Amendment Standing*

"Fourth Amendment rights are personal rights, and . . . they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure." *Simmons v. United States*, 390 U.S. 377, 389, 88 S. Ct. 967, 974, 19 L. Ed. 2d 1247 (1968). An individual's ability to invoke those rights "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Rakas v. Illinois*, 439 U.S. 128, 140, 99 S. Ct. 421, 428, 58 L. Ed. 2d 387 (1978); *Delong v. Commonwealth*, 234 Va. 357, 363, 362 S.E.2d 669, 672 (1987).

> In order to claim protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that his expectation is reasonable, i.e. one that has "a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society."

*Minnesota v. Carter*, 525 U.S. 83, 88, 119 S. Ct. 469, 472, 142 L. Ed. 2d 373 (1998) (quoting *Rakas*, 439 U.S. at 143-44, 99 S. Ct. at 430-31); *Megel v. Commonwealth*, 262 Va. 531, 534, 551 S.E.2d 638, 640 (2001) ("Whether a person has the right to claim the protection of the Fourth Amendment depends upon whether the person has a legitimate expectation of privacy in the place searched."). The individuals asserting their Fourth Amendment

rights bear the burden of showing a legitimate expectation of privacy in the place searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S. Ct. 2556, 2561, 65 L. Ed. 2d 633 (1980); *Barnes v. Commonwealth*, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987).

To establish a legitimate expectation of privacy, an individual must demonstrate both a subjective expectation of privacy in the location searched and "an objectively reasonable expectation of privacy that is justifiable under the circumstances." *Rideout v. Commonwealth*, 62 Va. App. 779, 788, 753 S.E.2d 595, 599 (2014). Courts examine a number of factors, including:

> whether the defendant has a possessory interest in . . . the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.

*McCoy v. Commonwealth*, 2 Va. App. 309, 312, 343 S.E.2d 383, 385 (1986) (quoting *United States v. Haydel*, 649 F.2d 1152, 1155 (5th Cir. 1981)).

## A. *Defendant David Shaun Fuller*

Turning to the present case, the Court notes initially that neither defendant owned the real property or the residence; the real property was owned by Ms. Robinson, and the residence was owned by Ms. Fuller. (T. 19-21.) In spite of lack of ownership, Ms. Robinson and Ms. Fuller, the owners of the real property and the residence respectively, testified that Defendant David Shaun Fuller had permission to be on their property, and he had control of not only the outbuilding but also the residence. (T. 14-15, 29-30.) He lived there and was charged with caring for the property. (T. 22:23-25, 36:18-25, 44:13-15.) Additionally, he regularly received packages at the property. (T. 58:14-24.) Accordingly, the Court finds Defendant David Shaun Fuller has a legitimate expectation of privacy in the area searched.

## B. *Defendant Charles Ryan Fuller*

Defendant Charles Ryan Fuller asserts that, by virtue of his indictment under § 18.2-258 for Owning or Maintaining a Common Nuisance and under § 18.2-258.02 for Maintaining a Fortified Drug House, he has standing to assert his Fourth Amendment rights. (Def. Reply at 1-2.) He argues that "the Commonwealth cannot have it both ways." *Id.* Under the aforementioned indictments, "[t]he person charged must . . . own or maintain the premises." *Id.* Defendant posits that, as the Commonwealth

must prove he owned or maintained the premises at issue, he must have the requisite property interests in the property searched to confer standing. *Id.*

Historically, a defendant was automatically conferred Fourth Amendment standing if possession was an element of the offense charged. See *Jones v. United States*, 362 U.S. 257, 260-65, 80 S. Ct. 725, 730-33, 4 L. Ed. 2d 697 (1960). In *United States v. Salvucci*, the United States Supreme Court reversed its holding in *Jones* and denied automatic standing to those charged with possessory crimes. 448 U.S. 83, 90-91, 100 S. Ct. 2547, 2552, 65 L. Ed. 2d 619 (1980). The Court reasoned:

> the decisions of this Court, especially our most recent decision in *Rakas v. Illinois*[,] clearly establish that a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction.

*Id.* at 90, 100 S. Ct. at 2552. Thus, a person can be in legal possession of the good unlawfully seized and, therefore, subject to prosecution, without being victim to a Fourth Amendment violation. *Id.* at 91, 100 S. Ct. at 2552. A corollary to this principal is an individual can be charged with maintaining or operating premises unlawfully searched without rising to the level of a legitimate expectation of privacy protected under the Fourth Amendment. See generally *Fox v. State*, 983 N.E.2d 1165 (Ind. App. 2013) (upholding the denial of motion to suppress where defendant charged with maintaining a common nuisance did not have a legitimate expectation of privacy in the premises searched); *Simpson v. State*, 121 Md. App. 263, 708 A.2d 1126 (1998) (holding that the defendant's indictment for maintaining a common nuisance does not automatically confer standing to challenge a potential Fourth Amendment violation). Instead, the determination of whether a person has a legitimate expectation of privacy sufficient to assert a Fourth Amendment violation rests on the multifactor approach conceived in *Rakas* and developed through subsequent cases. See *Salvucci*, 448 U.S. at 91, 100 S. Ct. at 2552.

Moreover, the Virginia Supreme Court's holding in *Abell v. Commonwealth*, 221 Va. 607, 272 S.E.2d 204 (1980), is in accord with this proposition. In *Abell*, two men were observed carrying an attache case from a residence and placing it in the trunk of a vehicle. *Id.* at 614, 272 S.E.2d at 208. When the police later stopped the vehicle, a warrantless search of the vehicle's trunk, as well as the locked attache case, ensued. *Id.* After finding the case contained cocaine, both men were indicted for possession of a controlled substance. *Id.* at 609, 272 S.E.2d at 205. In analyzing whether the two men could seek to suppress the search of the case, the court stated "the burden now is upon the defendant moving for suppression of evidence . . . that he had a legitimate expectation of privacy in the property searched." The court did not afford the defendant standing merely because possession

was an element of the charge. Upon viewing all of the evidence, the court found the "actions of [both men] manifested a joint possessory interest and an expectation of privacy in the attache case, although neither one affirmatively asserted ownership of the case or its contents." *Id.* at 614, 272 S.E.2d at 208. Therefore, the charges facing the defendant are inapposite. "Legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest, for it does not invariably represent the protected Fourth Amendment interest." *Salvucci*, 448 U.S. at 91, 100 S. Ct. at 2552-53. The linchpin of Fourth Amendment standing is whether the facts presented at the suppression hearing reflect that the defendant had a legitimate expectation of privacy in the premises.

Fourth Amendment rights are personal and may not be asserted vicariously. *Rakas*, 439 U.S. at 132-33, 99 S. Ct. at 425. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Id.* at 134, 99 S. Ct. at 425. "[C]oconspirators and codefendants have been accorded no special standing." *United States v. Padilla*, 508 U.S. 77, 82, 113 S. Ct. 1936, 1938, 123 L. Ed. 2d 635 (1993) (quoting *Alderman v. United States*, 394 U.S. 165, 172, 89 S. Ct. 961, 965, 22 L. Ed. 2d 176 (1969)). Where two or more persons are jointly involved in the alleged commission of a crime, it is not unusual for one codefendant to have standing while another codefendant may not. See, e.g., *Commonwealth v. Leonard*, 5 Va. Cir. 35 (Botetourt Cnty. 1982). Courts examine whether the defendant in each specific case has standing, without regard to the standing of other codefendants. *Padilla*, 508 U.S. at 82, 113 S. Ct. at 1938; cf. *Rakas*, 439 U.S. at 131, n. 1, 424 ("The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."); *Parks v. Commonwealth*, 221 Va. 492, 496-97, 270 S.E.2d 755, 758 (1980).

Courts have repeatedly denied motions to suppress where the defendant has failed to demonstrate a legitimate expectation of privacy in the area searched. See, e.g., *United States v. Castellanos*, 716 F.3d 828 (4th Cir. 2013); *United States v. Allison*, 398 Fed. Appx. 862 (4th Cir. 2010); *United States v. Jackson*, 585 F.2d 653 (4th Cir. 1978) (affirming the denial of a motion to suppress where defendants, charged with the conduct, operation, and management of an illegal gambling business, did not have a legitimate expectation of privacy in the building housing the gambling business); *Sharpe v. Commonwealth*, 44 Va. App. 448, 605 S.E.2d 346 (2004) (affirming denial of a motion to suppress where defendant failed to show a legitimate expectation of privacy in the motel room even though he was present in the room for a period of time); cf. *Jones v. Commonwealth*, 32 Va. App. 30, 526 S.E.2d 281 (2000) (holding the defendant had a legitimate expectation of privacy in a house where he owned and frequently visited the house but lived in another location). Accordingly, Defendant Charles Ryan Fuller bears the

burden of proving he has a legitimate expectation of privacy in the place searched. See *Barnes*, 234 Va. at 135, 360 S.E.2d at 200.

Examining the evidence in the present case, Defendant Charles Ryan Fuller did not own the land or the residence. (T. 35:15-24.) Nor did he reside in the house. (T. 29:3-4, 32.) In light of the scant evidence presented regarding Defendant Charles Ryan Fuller's ties to the property, the Court finds he has failed to carry his burden of establishing he had a legitimate expectation of privacy in the premises.

## II. *Search of the Curtilage*

Assuming without deciding that the defendant impliedly consented to the officer's entry onto the driveway and the 'No Trespassing' sign had no effect, Officer Childress still engaged in unconstitutional conduct, a warrantless search of the backyard which exceeded the scope of that implied consent and was unsupported by exigent circumstances, which formed the foundation and sole basis for the later obtained warrant.

### A. *Implied Consent*

In *Florida v. Jardines*, the United States Supreme Court described the scope of implied consent:

> This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent an invitation to linger longer) leave. Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick or treaters. Thus, a police officer not armed with a warrant may approach a home and knock, precisely because that is "no more than any private citizen might do."

133 S. Ct. 1409, 1415-16, 185 L. Ed. 2d 495 (2013) (quoting *Kentucky v. King*, 131 S. Ct. 1849, 1862, 179 L. Ed. 2d 865 (2011)).

Defendant argues that implied consent is inapplicable to this case because Officer Childress failed to even attempt to 'knock and talk' or otherwise contact the residents. (Def. Br. 8.) The Supreme Court of Virginia explicitly rejected this narrow contention. See *Robinson v. Commonwealth*, 273 Va. 26, 38, 639 S.E.2d 217, 224 (2007) ("[W]e reject the [Defendants'] suggestion that we adopt a bright line rule holding that implied consent given by a resident of a dwelling is limited in all cases to entry onto the premises to 'knock and talk' to the resident and that any deviation from this purpose precludes application of the implied consent doctrine."). In fact, the *Robinson* court upheld the officer's deviation from the scope of implied

consent, where he never knocked on the front door to contact the residents, when his failure to do so was justified by probable cause and exigent circumstances. Therefore, Officer Childress' conduct is not rendered infirm due to his failure to execute a 'knock and talk.' Rather, the flaw in Officer Childress was his deviation from the scope of implied consent into the backyard without exigent circumstances.

## B. *Warrantless Search of the Curtilage*

This Court previously held that Officer Childress' departure from the driveway to explore the curtilage of the property without a warrant was unreasonable. An entry into the curtilage of a home without a warrant is inherently unreasonable unless both probable cause and exigent circumstances exist. *Jefferson*, 27 Va. App. at 16, 497 S.E.2d at 481. Therefore, the Officer's warrantless search of the backyard must be supported by both probable cause and exigent circumstances.

### 1. *Probable Cause*

The record reflects that, upon exiting his vehicle, Officer Childress smelled marijuana. (T. 83-84.) At this point in time, he believed that "there's probably a couple plants growing around here. You know, close. I was expecting to walk around back and see it growing out behind the building . . . [o]r out behind the trailer, or on the edge of the wood line." (T. 85:15-19.) The smell of marijuana alone is likely sufficient probable cause to support a warrantless search of the curtilage.

### 2. *Exigent Circumstances*

While probable cause may have existed, exigent circumstances did not exist sufficient to permit a warrantless search of the premises. To determine whether exigent circumstances exist, courts must engage in a fact specific analysis of a number of factors, including:

> (1) the degree of urgency involved and the time required to get a warrant; (2) the officers' reasonable belief that contraband is about to be removed or destroyed; (3) the possibility of danger to others, including police officers left to guard the site; (4) information that the possessors of the contraband are aware that the police may be on their trail; (5) whether the offense is serious or involves violence; (6) whether officers reasonably believe the suspects are armed; (7) whether there is, at the time of entry, a clear showing of probable cause; (8) whether the officers have strong reason to believe the suspects are actually present in the premises; (9) the likelihood of escape if the

suspects are not swiftly apprehended; and (10) the suspects' recent entry into the premises after hot pursuit.

*Verez v. Commonwealth*, 230 Va. 405, 410-11, 337 S.E.2d 749, 753 (1985). Officer Childress testified that the smell of marijuana prompted him to depart from the driveway and begin searching the curtilage of the property. (T. 85-87.) After examining the officer's conduct in light of these factors, the Court finds that exigent circumstances were not present. Accordingly, the Court finds Officer Childress' warrantless search of the curtilage was unreasonable and in violation of the Fourth Amendment.

### III. *Exclusionary Rule*

The exclusionary rule generally prohibits the introduction of evidence that "is in some sense the product of illegal governmental activity." *United States v. Crews*, 445 U.S. 463, 471, 100 S. Ct. 1244, 1250, 63 L. Ed. 2d 537 (1980). "The exclusionary rule operates not only against evidence seized and information acquired during an unlawful search or seizure but also against derivative evidence discovered because of the unlawful act." *Warlick v. Commonwealth*, 215 Va. 263, 265, 208 S.E.2d 746, 748 (1974); *Murray v. United States*, 487 U.S. 533, 536-37, 108 S. Ct. 2529, 2532, 101 L. Ed. 2d 472 (1988). The admissibility of derivative evidence, so called "fruit of the poisonous tree," depends on whether the evidence was obtained "by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint" of the illegal conduct. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963).

In the Petition for Reconsideration, Defendants shed light on the source of facts underlying Officer Childress' application for a search warrant, with particular attention to the smell of raw marijuana. Defendants identified two colloquies during the first oral hearing that are particularly relevant:

> Q. [By Mr. Compton]: And based upon that odor, what did you do?
>
> A. [By Officer Childress]: Well based on the odor, I said, well, there's probably a couple plants growing around here, you know, close. I was expecting to walk around back and see it growing out behind the building, as we usually do, or out behind the trailer, or on the edge of the wood line . . . . And then that is when we go from there, I do a walk-around to make sure that it is not something outside. And then, curiosity. It was like where is this odor coming from . . . .

(T. 85-86 (emphasis added).)

> Q. [By Mr. Galumbeck]: When you were there the first time and you smelled the odor of marijuana, you were unable to tell where that odor was coming from at first; correct?
>
> A. [By Officer Childress]: Yes.
>
> Q. In other words, you initially went into the back yard because you thought that is where it was?
>
> A. Well that is where I thought it was when I was in the driveway.
>
> Q. Right.
>
> A. Yea, I just thought it was an outside grow when I first arrived.

(T. 99 (emphasis added).) Therefore, when Officer Childress was on the constitutionally firm ground of the driveway, he believed the source of the marijuana smell was the backyard or the tree line.

It was not until after he engaged in the unconstitutional conduct that was he able to particularize the location of the smell; "When I was doing the observation I was trying to figure out, you know, where the smell was coming from. Walking around the residence, looking . . . . I was observing as I smelled the odor to try to figure out where it was coming from." (T. 102-03.) Officer Childress began walking around the residence, smelling around the windows. Eventually, Officer Childress approached a vent, where he noticed the smell was "really strong." (T. 86.) It was not until he "hunkered down" that he realized the smell was coming from the residence. (T. 86:12-14.) As the Court previously noted this warrantless search of the curtilage was unconstitutional, it is apparent that the unconstitutional conduct was exploited to determine the location of the smell.

Marijuana "coming from the residence;" and "every window in the trailer is covered with plastic or with black paint." (Comm. Ex. 1 (emphasis added).) With regard to the latter fact, Officer Childress noted that every window was obscured, which includes the windows in the backyard. Officer Childress determined these windows were covered only after the unlawful entry into the backyard. (T. 100:15-22) ("I knew that every window in the residence, as I walked around the residence was blacked out or had covers over them."). And as found *supra*, Officer Childress did not determine the smell was "coming from the residence" until after he had searched the backyard. Accordingly, the unconstitutional search was exploited to obtain both facts underlying the search warrant.

A. *Attenuation Doctrine*

The evidence seized is not sufficiently attenuated from the illegal search to justify admission. Under the attenuation doctrine, the Court's inquiry "is whether the chain of causation proceeding from the unlawful conduct has become so attenuated or has been interrupted by some intervening circumstances so as to remove the 'taint' imposed upon that evidence by the original illegality." *Crews*, 445 U.S. at 471, 100 S. Ct. at 1250. The Supreme Court has identified a number of factors that are to be considered when determining whether derivative evidence has been purged of the taint of unlawful conduct: (1) the "temporal proximity" of the unlawful act and the acquisition of the evidence; (2) "the presence of intervening circumstances"; and (3) "the purpose and flagrancy of the official misconduct." *Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S. Ct. 2254, 2261-62, 45 L. Ed. 2d 416 (1975).

The evidence in the present case demonstrates only a short period elapsed between the unconstitutional search and the seizure pursuant to the warrant. Officer Childress did not engage in any additional investigation; he took the facts obtained from the unconstitutional search straight to a magistrate to seek a search warrant. This relatively short intervening time and lack of meaningful intervening events weighs against attenuation. Cf. Taylor v. Alabama, 457 U.S. 687, 691, 102 S. Ct. 2664, 2667-68, 73 L. Ed. 2d 314 (1982) (holding six hours with no intervening events insufficient to dissipate taint); United States v. Najjar, 300 F.3d 466, 478 (4th Cir. 2002) (holding two years is sufficient time to dissipate the taint when additional investigation was conducted).

Finally, the Court must examine the flagrancy of the Officer's conduct. "[A] warrantless search used to justify a later warranted search, a violation that goes to the core of the Fourth Amendment, should be viewed with somewhat heightened suspicion." *Najjar*, 300 F.3d at 479. Here, the Courts notes, upon exiting his vehicle and smelling marijuana, Office Childress might have immediately left the premises to obtain a search warrant and then lawfully searched the residence and curtilage. Indeed, the Court believed, as reflected in its prior opinion, the facts supporting the warrant were obtained solely from the driveway of the residence. But, this was not the case. Officer Childress conducted an unconstitutional, warrantless search of the entire curtilage, including the back yard and front porch, to procure the facts he deemed necessary to obtain a warrant. This conduct goes against the very text and spirit of the Fourth Amendment. After considering each of these factors, the Court finds the evidence seized pursuant to the warrant following the illegal search is not sufficiently attenuated to justify admission.

## B. *Independent Source Doctrine*

Furthermore, the later obtained search warrant is not an independent source which would justify admission of the evidence. The independent source doctrine applies, in a general sense, to "all evidence acquired in a fashion untainted by the illegal evidence-gathering activity. Thus, where an unlawful entry has given investigators knowledge of facts x and y, but fact z has been learned by other means, fact z can be said to be admissible because derived from an 'independent source'." *Murray*, 487 U.S. at 537-38, 108 S. Ct. at 2533. Knowledge or evidence obtained during a prior illegal search cannot be proffered in support of probable cause in a subsequent application for a search warrant. *Williams v. Commonwealth*, 26 Va. App. 612, 619, 496 S.E.2d 113, 116 (1998). When faced with determining the validity of a warrant obtained after unlawful action, Courts must strike the facts tainted by the unlawful action and then determine whether probable cause exists. *United States v. Gillenwaters*, 890 F.2d 679, 681 (4th Cir. 1989) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 2685, 57 L. Ed. 2d 667 (1978)) (stating courts must "set aside the suspect material and make a probable cause evaluation based on what remained of the affidavit"). If the remaining untainted facts state sufficient probable cause to support the warrant, the warrant is valid and serves as an independent source for the admission of the seized evidence. See, e.g., *id.*; *United States v. Whitehorn*, 813 F.2d 646, 649 (4th Cir. 1987).

In the present case, Officer Childress gained knowledge of the covered windows and location of the marijuana smell, facts x and y, during his unlawful entry onto the curtilage. These facts arose directly out of the illegality and, therefore, should not be considered by the Court in evaluating the sufficiency of the affidavit. *Franks*, 438 U.S. at 171-72, 98 S. Ct. at 2685. After striking those facts, no additional information remains to establish probable cause. Accordingly, the search warrant does not serve as an independent source sufficient to foreclose application of the exclusionary rule. Cf. *Murray*, 487 U.S. at 542, 108 S. Ct. at 2536 (noting the independent source doctrine is inapplicable "if the agents' decision to seek the warrant was prompted by what they had seen during the initial [unlawful] entry").

## C. *Deterrent Effect*

The exclusionary rule is not intended to be curative; rather, it is designed to deter future police misconduct by removing the incentive to act in violation of the Constitution. *Stone v. Powell*, 428 U.S. 465, 486, 96 S. Ct. 3037, 3048, 49 L. Ed. 2d 1067 (1976). Courts should be cautious in applying the rule and only do so when it would have the effect of deterring future unconstitutional conduct. *Id.* This is one such case. Here, the governmental conduct violated Defendants' property interest in their

home, the very interest the Fourth Amendment and its warrant requirement are designed to protect. The officer cannot seek to cure an unconstitutional search by later seeking a warrant and then profit from that unlawful conduct by seizing evidence pursuant to the warrant. This, in effect, renders the warrant requirement meaningless.

The Court is cognizant that, in applying the exclusionary rule today, substantial evidence will be rendered inadmissible at trial. But in doing so, the Court feels the deterrent effect on future unconstitutional conduct, warrantless searches of the curtilage where no clear exigency exists, outweighs the admittedly heavy social costs of exclusion in this particular case. Accordingly, the Court holds the exclusionary rule applies.

## IV. *Conclusion*

In case numbers 118-11 through 121-11, the Court denies Defendant Charles Ryan Fuller's Motion to Suppress. The Court holds that Defendant Charles Ryan Fuller has failed to carry his burden of establishing he had a legitimate expectation of privacy in the premises searched.

In case number 122-11 through 125-11, the Court grants Defendant David Shaun Fuller's Motion to Suppress. Officer Childress conducted an unconstitutional warrantless search of the curtilage of Defendant's property, and the facts obtained during this search were exploited to obtain a search warrant. Therefore, the evidence seized pursuant to the warrant was derived from the illegality; it is "fruit of the poisonous tree." Accordingly, the exclusionary rule applies, and Defendant's Motion to Suppress should be granted.