## UNITED STATES *v.* PADILLA ET AL.

No. 92–207.  Argued March 24, 1993—Decided May 3, 1993

*Acting Solicitor General Bryson* argued the cause for the United States.  With him on the briefs were *Solicitor*

*General Starr, Assistant Attorney General Mueller,* and *Joel M. Gershowitz.*

*Walter B. Nash III,* by appointment of the Court, 507 U. S. 904, argued the cause for all respondents. With him on the brief for respondents Padilla et al. were *Richard B. Jones* and *Natman Schaye. David A. Bono,* by appointment of this Court, 506 U. S. 1077, filed a brief for respondents Simpson et al.*

PER CURIAM.

The United States Court of Appeals for the Ninth Circuit has adopted what it terms a "coconspirator exception" to the rule regarding who may challenge the constitutionality of a search or seizure. Under its reasoning, a co-conspirator obtains a legitimate expectation of privacy for Fourth Amendment purposes if he has either a supervisory role in the conspiracy or joint control over the place or property involved in the search or seizure. This "exception," apparently developed in a series of earlier decisions of the Court of Appeals, squarely contradicts the controlling case from this Court. We therefore reject it.

While patrolling Interstate Highway 10 in Casa Grande, Arizona, Officer Russel Fifer spotted a Cadillac traveling westbound at approximately 65 miles per hour. Fifer followed the Cadillac for several miles because he thought the driver acted suspiciously as he passed the patrol car. Fifer ultimately stopped the Cadillac because it was going too slowly. Luis Arciniega, the driver and sole occupant of the car, gave Fifer his driver's license and an insurance card demonstrating that respondent Donald Simpson, a United States customs agent, owned the Cadillac. Fifer and Robert Williamson, an officer who appeared on the scene to assist Fifer, believed that Arciniega matched the drug courier profile. Acting on this belief, they requested and received Arci-

---

*John Wesley Hall, Jr.,* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

niega's permission to search the vehicle. The officers found 560 pounds of cocaine in the trunk and immediately arrested Arciniega.

After agreeing to make a controlled delivery of the cocaine, Arciniega made a telephone call to his contact from a motel in Tempe, Arizona. Respondents Jorge and Maria Padilla drove to the motel in response to the telephone call, but were arrested as they attempted to drive away in the Cadillac. Like Arciniega, Maria Padilla agreed to cooperate with law enforcement officials. She led them to the house in which her husband, respondent Xavier Padilla, was staying. The ensuing investigation linked Donald Simpson and his wife, respondent Maria Sylvia Simpson, to Xavier Padilla.[1]

Respondents were charged with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U. S. C. § 846, and possession of cocaine with intent to distribute, in violation of § 841(a)(1). Xavier Padilla was also charged with engaging in a continuing criminal enterprise, in violation of 21 U. S. C. § 848 (1988 ed. and Supp. III). Respondents moved to suppress all evidence discovered in the course of the investigation, claiming that the evidence was the fruit of the unlawful investigatory stop of Arciniega's vehicle. The United States District Court for the District of Arizona ruled that all respondents were entitled to challenge the stop and search because they were involved in "a joint venture for transportation . . . that had control of the contraband." App. to Pet. for Cert. 22a. The District Court reasoned that, as owners, the Simpsons retained a reasonable expectation of privacy in their car, but that the Padillas could

---

[1] A related investigation led by the Drug Enforcement Agency (DEA) revealed that Warren Strubbe was also involved in the conspiracy. Although Strubbe technically is a respondent in this case, see this Court's Rule 12.4, the Court of Appeals found that he could not challenge the stop and search of the Cadillac. Strubbe did not file a petition challenging that decision, and we therefore do not address that aspect of the court's opinion.

contest the stop solely because of their supervisory roles and their "joint control over a very sophisticated operation . . . ." *Id.*, at 23a. On the merits, the District Court ruled that Officer Fifer lacked reasonable suspicion to stop Arciniega,[2] and granted respondents' motion to suppress.

The Court of Appeals affirmed in part, vacated in part, and remanded. The court began its analysis by stating that in order "[t]o contest the legality of a search and seizure, the defendants must establish that they had a 'legitimate expectation of privacy' in the place searched or the property seized." 960 F. 2d 854, 858–859 (CA9 1992) (quoting *Rakas* v. *Illinois*, 439 U. S. 128, 143–144 (1978)). The court then recited its co-conspirator rule: "[A] coconspirator's participation in an operation or arrangement that indicates joint control and supervision of the place searched establishes standing." 960 F. 2d, at 859 (citations omitted).

Relying on a line of cases from the Ninth Circuit, the court held that "because Xavier Padilla and Donald and Maria Simpson have demonstrated joint control and supervision over the drugs and vehicle and engaged in an active participation in a formalized business arrangement, they have standing to claim a legitimate expectation of privacy in the property searched and the items seized." *Id.*, at 860–861. Donald Simpson established an expectation of privacy "not simply because [he] owned the car" but also because "he had a coordinating and supervisory role in the operation. He was a critical player in the transportation scheme who was essential in getting the drugs across the border." *Id.*, at 860. Maria Simpson established a privacy interest because she "provided a communication link" between her husband, Xavier Padilla, and other members of the conspiracy, and "held a supervisory role tying everyone together and overseeing the entire operation." *Ibid.* Xavier Padilla established an expectation of privacy because he "exhibited sub-

---

[2] The Government did not challenge this finding on appeal and does not do so here.

stantial control and oversight with respect to the purchase [and] the transportation through Arizona." *Ibid.* The court expressly stated that it did not matter that Padilla was not present during the stop, or that he could not exclude others from searching the Cadillac. *Ibid.*

The Court of Appeals could not tell from the record whether Jorge and Maria Padilla "shared any responsibility for the enterprise," or whether they were "mere employees in a family operation." *Id.,* at 861. As a result, the court remanded to the District Court for further findings on that issue.

The Ninth Circuit appears to stand alone in embracing the "coconspirator exception."[3] We granted certiorari to resolve the conflict, 506 U. S. 952 (1992), and now reverse. It has long been the rule that a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that *his* Fourth Amendment rights were violated by the challenged search or seizure. *Alderman* v. *United States,* 394 U. S. 165, 171–172 (1969); *Rakas* v. *Illinois, supra,* at 131, n. 1, 133–134; *Rawlings* v. *Kentucky,* 448 U. S. 98, 106 (1980). We applied this principle to the case of co-conspirators in *Alderman,* in which we said:

> "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated

---

[3] The First, Second, Fifth, Sixth, Eighth, Eleventh, and District of Columbia Circuits have declined to adopt an exception for co-conspirators or codefendants. See *United States* v. *Soule,* 908 F. 2d 1032, 1036–1037 (CA1 1990); *United States* v. *Galante,* 547 F. 2d 733, 739–740 (CA2 1976), cert. denied, 431 U. S. 969 (1977); *United States* v. *Hunter,* 550 F. 2d 1066, 1074 (CA6 1977); *United States* v. *DeLeon,* 641 F. 2d 330, 337 (CA5 1981); *United States* v. *Kiser,* 948 F. 2d 418, 424 (CA8 1991), cert. denied, 503 U. S. 983 (1992); *United States* v. *Brown,* 743 F. 2d 1505, 1507–1508 (CA11 1984); *United States* v. *Davis,* 199 U. S. App. D. C. 95, 108, 617 F. 2d 677, 690 (1979).

by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." 394 U. S., at 171–172.

In *Rakas, supra,* a police search of a car yielded a box of rifle shells found in the glove compartment and a sawed-off rifle found under the passenger seat. We held that petitioners, who were passengers in the car and had no ownership interest in the rifle shells or sawed-off rifle, and no legitimate expectation of privacy in the area searched, had suffered no invasion of their Fourth Amendment rights. See also *Rawlings, supra; Soldal* v. *Cook County,* 506 U. S. 56, 62–64 (1992) (decided since the Court of Appeals rendered its decision in the present case).

The "coconspirator exception" developed by the Ninth Circuit is, therefore, not only contrary to the holding of *Alderman,* but at odds with the principle discussed above. Expectations of privacy and property interests govern the analysis of Fourth Amendment search and seizure claims. Participants in a criminal conspiracy may have such expectations or interests, but the conspiracy itself neither adds to nor detracts from them. Neither the fact, for example, that Maria Simpson was the "communication link" between her husband and the others, nor the fact that Donald Simpson and Xavier Padilla were in charge of transportation for the conspirators, has any bearing on their respective Fourth Amendment rights.

We therefore reverse the judgment of the Court of Appeals. The case is remanded so that the court may consider whether each respondent had either a property interest protected by the Fourth Amendment that was interfered with by the stop of the automobile driven by Arciniega, or a reasonable expectation of privacy that was invaded by the search thereof. *Alderman, supra; Rakas, supra; Rawlings, supra; Soldal, supra.*

*It is so ordered.*