OPINION OF THE COURT
JORDAN, Circuit Judge.
Michael King appeals from a judgment entered by the United States District Court for the District of Delaware convicting him of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). King’s attorney filed a brief as permitted by Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that there are no non-frivolous issues to appeal and seeking leave to withdraw from representing King. In response, King submitted a pro se brief in which he argues that the District Court erred in denying his motion to suppress. For the following reasons, we will grant counsel’s request to withdraw and affirm the judgment of conviction and sentence.
I. Background

A. Factual Background

At approximately 11:00 p.m. on February 12, 2008, Officers Matthew Kucharski and David Hamrick, and several other officers from the Wilmington Police Department, responded to a 911 call at the Bethel Villa Apartments in Wilmington, Delaware. The 911 caller was a woman residing at Bethel Villa who reported that a man with a gun had threatened to kill her. Upon arrival, Kucharski and Hamrick met the victim and heard her description of what had occurred. According to the victim, she had arrived home and found King sitting on the steps in the hallway of her apartment building smoking marijuana. A verbal altercation ensued, during which King told the victim, “mind your own business before I kill you.” (App. at A43.) After the victim went inside her apartment, King knocked on her apartment door, and she opened it slightly, leaving the chain-lock secured. King then pointed a silver gun toward her and said, “you’re going to die.” (App. at A44.) As she was closing the door, the victim heard King running upstairs and she looked out the door again in time to see him run into Apartment Cl, on the third floor.
Kucharski and Hamrick next proceeded to Apartment Cl, with the victim following close behind. Kucharski knocked on the apartment door, which was opened by Res-sa Cottingham, King’s girlfriend. Cotting-ham allowed them to enter the apartment to discuss the incident and confirmed to the officers that she lived in the apartment and her name was on the lease. Once inside, the officers noticed that there were children in the apartment, but they did not immediately observe any other adults.[1] Cottingham informed the officers that *783 King was also in the apartment. After the officers asked to speak with him, Cotting-ham yelled down the hallway for King, who came out of a bedroom. As King came out, the victim, who was able to see into the apartment from the outside hallway through the open door, identified King as the man who had threatened her.
Kueharski then patted down King and felt what he believed to be a bag of illegal drugs in his front right jacket pocket. Kueharski asked King what the object was, and King responded, “I don’t know, check.” (App. at A51.) Kueharski retrieved the bag from King’s pocket and found it contained marijuana. He then placed King under arrest and took him to the patrol car. According to the officers, as King left the apartment, he told Cot-tingham not to let the officers search the apartment without a warrant.
While Kueharski remained with King outside the apartment, Hamrick spoke to Cottingham about the incident and obtained Cottingham’s consent to search the apartment. Prior to receiving such consent, Hamrick reviewed a Wilmington Department of Police Consent to Search form with Cottingham and read the entire document to her. Cottingham signed the form, which acknowledges that Cottingham had the right to refuse the police to search her property, that she in fact waived this right of refusal, and that her written permission to search the property was given without threat, promises, or inducements of any kind. After obtaining Cottingham’s written consent, Hamrick proceeded to search the bedroom where King had been when the officers arrived at the apartment. While searching in the closet, Hamrick found a silver revolver, which the victim identified as the gun that King had brandished when he threatened to kill her.
After King’s arrest, Officer David Rosenblum took his statement. King said that he was living in the apartment with Cottingham and her child, but he also mentioned that he lived at another address. Rosenblum also interviewed Cot-tingham, who asserted that King did not live in the apartment and only stayed there occasionally.

B. Procedural Background

On March 4, 2008, a grand jury sitting in the District of Delaware returned a one-count indictment against King, charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). King filed a motion to suppress evidence and statements, arguing that law enforcement officials had conducted a warrantless search in violation of the Fourth Amendment. At the suppression hearing that ensued, the focus was on whether King had standing to raise a Fourth Amendment challenge to the search of Cottingham’s apartment, as either a co-resident at the apartment or an overnight guest.
During the hearing, Nicholas Riley, a friend of King’s for the last five years, testified that King had a six-month-old baby with Cottingham and had been living with her in the apartment for approximately one year. When asked how he knew King lived with Cottingham, Riley stated, “I usually pick him up. I see him hanging out and visiting with her. I would go over and call.” (App. at A106.) In addition, Riley testified that King had keys to the apartment and kept his clothes and car at the apartment.
Riley also testified that he was sitting on the couch in Cottingham’s apartment when the officers entered and witnessed the events immediately before the arrest.[2] He *784 testified that Cottingham initially refused to give the officers permission to search the apartment and only consented to the search after they threatened to call Social Services and have her children taken from her. In addition, Riley claimed that the door to apartment Cl was closed while the officers were inside Cottingham’s apartment and that the victim was not present to identify King when he exited the bedroom. Thus, Riley testified that the identification did not occur as the officers claimed it did.
Sean Williams, an investigator for the Federal Public Defender’s Office, testified that he interviewed Cottingham, who informed him that she was being evicted from her apartment because of allegations that King lived with her. However, Cot-tingham never told Williams that the allegations were true (ie., that King was in fact living there.) Cottingham did not appear at the suppression hearing because the lawyer representing her in eviction proceedings instructed her not to speak about the incident.
The District Court denied King’s motion to suppress, concluding that King had not established a reasonable expectation of privacy in Cottingham’s residence as either a coresident or as an overnight guest. The Court found Riley’s testimony to be unworthy of belief. Instead, the Court credited the testimony of Officers Kucharski and Hamrick. Specifically, the Court stated:
Mr. Riley testified that he was with Mr. King throughout the day, but he was not with him when he ran from downstairs to Ms. Cottingham’s apartment upstairs. However, Mr. Riley testified that he was present when the Officers entered Ms. Cottingham’s apartment. Mr. Riley’s version of the events that transpired after the marijuana was found in Mr. King’s pocket differs from the testimony of the Officers, and the Court credits the testimony of Officers Kucharski and Hamrick. For example, Mr. Riley testified that there was a twenty minute gap between the time the Officers found the marijuana and the time they took Mr. King out of the apartment. During this twenty minute gap, Mr. Riley testified that the Officers were threatening Ms. Cottingham saying that they would take her kids away from her, and yet, Mr. King “was standing, just standing there looking’ ... This testimony is not only inconsistent with the Officer’s testimony, but it is also inconsistent with the position advanced by Mr. King in his Motion, i.e., that Mr. King was expressing his lack of consent to the search by telling Ms. Cottingham not to provide the Officers with consent to search the premises.
(App. at A17-18.) The Court also stated that Riley’s use of the words “hanging around” and “visiting” are inconsistent with the premise that King lived at the apartment. According to the Court, “a resident would not merely be ‘hanging out’ and ‘visiting’ with Ms. Cottingham, he would be living with her in the apartment on a consistent and regular basis.” (App. at A18.) The Court also found that Riley’s testimony was contradicted by Cotting-ham’s lease, which prohibited King’s full or part-time residence at the apartment, and by Detective Rosenblum’s testimony regarding his interview with Cottingham. Thus, the Court concluded that King had failed to adduce sufficient evidence to establish that he was a co-resident of the apartment at the time of the search.
The Court also concluded that King’s occasional presence at the apartment was insufficient evidence to establish that he was an overnight guest at the time in question. Further, aside from Riley’s tes *785 timony, which the Court rejected, there was no evidence that King had clothes, belongings, or any overnight bags in the apartment.
On October 9, 2008, King pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2), reserving the right to appeal the District Court’s suppression ruling. On January 16, 2009, the Court sentenced King to 78 months of imprisonment and three years of supervised release. King has timely appealed.
II. Discussion[3]
Under Anders v. California, “if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.” 386 U.S. 738, 744, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). “That request must ... be accompanied by a brief referring to anything in the record that might arguably support the appeal.” Id. In United States v. Youla, we summarized the requirements for counsel’s withdrawal and our review of the record as follows:
The duties of counsel when preparing an Anders brief are (1) to satisfy the court that counsel has thoroughly examined the record in search of appealable issues, and (2) to explain why the issues are frivolous. Counsel need not raise and reject every possible claim. However, at a minimum, he or she must meet the “conscientious examination” standard set forth in Anders.
241 F.3d 296, 300-01 (3d Cir.2001) (citations omitted). An appeal is frivolous where “none of the legal points are arguable on the merits.” Id. at 301 (citations omitted).
In this case, the only potential issues mentioned in King’s counsel’s brief relate to the motion to suppress and the reasonableness of King’s sentence. After describing those issues, counsel acknowledged that there was no sound basis for advancing them on appeal. King apparently concedes that there are no non-frivolous arguments regarding the reasonableness of his sentence, as the only argument raised in his pro se brief pertains to the motion to suppress.[4]
Turning to the argument raised by King in his pro se brief, “[w]e review [a] district court’s denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court’s properly found facts.” United States v. Givan, 320 F.3d 452, 458 (3d Cir.2003) (citations omitted).
The Fourth Amendment protects “the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.” U.S. Const. Amend. IV. Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause, unless it falls within an exception to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). If voluntary consent is obtained from the individual whose property is to be searched or a third party with common authority or joint control over the premises, the government may search the premises without a warrant. Schneckloth v. Bustamonte, 412 U.S. 218, *786 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In his motion to suppress, King argued that the evidence obtained by the government should be suppressed because the government did not obtain valid consent to search the apartment where King’s gun was found.[5] In order to maintain such a challenge, King must show that his own constitutional rights have been violated by the search in question, ie., that he has standing. United States v. Padilla, 508 U.S. 77, 81-82, 113 S.Ct. 1936, 123 L.Ed.2d 635 (1993).
To establish standing, the party contesting the legality of the search bears the threshold burden of establishing that he or she had a reasonable expectation of privacy in the property searched and the item seized. Minnesota v. Olson, 495 U.S. 91, 96-97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). At issue here is whether King has standing to challenge the search of Cottingham’s apartment by virtue of being a coresident or an overnight guest.[6] King does not take issue with the District Court’s application of law, but argues that the Court erred in its factual determinations that he was not a co-resident or overnight guest. Essentially, he argues that the Court erred by rejecting the testimony of Riley and accepting the testimony and statements of Kucharski, Hamrick, Rosenblum, and King’s own girlfriend, Cottingham. However, “assessments of credibility by the trial court are entitled to great deference at the appellate level.” Givan, 320 F.3d at 452 (quoting United States v. Brothers, 75 F.3d 845, 853 (3d Cir.1996)).
Further, the record reveals that the District Court’s factual findings are not clearly erroneous. The evidence supporting King’s position that he was a co-resident or overnight guest was limited and rebutted. Not only was Riley’s testimony inconsistent with that offered by the officers, it was also inconsistent with the arguments advanced by King at the suppression hearing and with statements made by Cotting-ham. For example, while Riley claimed that King lived at the apartment, Cotting-ham, who undisputably lived at the apartment, told officers that King did not live there. The Court was fully justified in accepting the testimony it chose to accept and in concluding that King was not a coresident or overnight guest. Having made that determination, the Court properly concluded that King lacked standing to challenge the search of Cottingham’s apartment.
We also conclude that counsel’s brief adequately demonstrates a thorough examination of the record in search of ap-pealable issues and an adequate explanation of why the issues are frivolous. Thus, counsel for King has satisfied the Anders requirements and we will grant the motion to withdraw.
III. Conclusion
For the foregoing reasons, will grant counsel’s request to withdraw representation and affirm the judgment of the District Court.

. In contrast, Nicholas Riley, a friend of King, testified that he was in Cottingham's apartment sitting on the couch when the officers entered.

. It is unclear whether Riley was in fact present when the officers entered Cottingham's apartment. Kueharski seems to recall Riley, or at least some adult male other than King, *784 being present. However, Hamrick does not recall seeing Riley in the apartment.

. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

. After reviewing the record, we also find that any argument with respect to the sentence would be frivolous. The District Court properly calculated King's Guideline range, meaningfully considered the Sentencing Guidelines and § 3553(a) factors, and provided detailed reasons for its imposition of a sentence at the top of the advisory Guidelines range.

. King did not dispute that Cottingham had the authority to permit the search. Rather, he argued that Cottingham's consent was not given freely and voluntarily, because it was only after the officers threatened to call Social Services and have her children taken from her that Cottingham consented to the search of her residence.

. A co-resident of a shared dwelling and an overnight guest of a dwelling are typically held to have a reasonable expectation of privacy in that dwelling. See e.g., Olson, 495 U.S. at 97, 110 S.Ct. 1684; United States v. Villegas, 495 F.3d 761, 772 (7th Cir.2007).