Filed 2/8/16  P. v. Bouapha CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHANTHALANGSY JOHN BOUAPHA,<br><br>    Defendant and Appellant. | H041069<br>(Santa Clara County<br>Super. Ct. No. C1224972)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 14, 2016, be modified in the following particulars:

1.      On page 12, lines 16-17, delete the sentence:  The defendant also denied knowing about the presence of marijuana on the previous occasion.

At the same location, replace with the sentence:  The defendant explained what had happened on the prior occasion:  "In Los Angeles I was caught for that.  I gave some boys a ride and they had mari[j]uana with them . . . they didn't return the car back to me."

There is no change in the judgment.

The petition for rehearing is denied.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


_____
MIHARA, J.


_____
GROVER, J.

Filed 1/14/16  P. v. Bouapha CA6 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHANTHALANGSY JOHN BOUAPHA,<br><br>    Defendant and Appellant. | H041069<br>(Santa Clara County<br>Super. Ct. No. C1224972) |

## I.    INTRODUCTION

Defendant Chanthalangsy John Bouapha appeals after a jury convicted him of possession for sale of marijuana (Health & Saf. Code, § 11359) and transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)).  The trial court sentenced defendant to a prison term of two years for the transportation count, and it stayed the possession for sale count.

Defendant's convictions were based on evidence that he hand-delivered a package to the shipping and receiving department of a company called Securematics, which is a distributor of electronic equipment.  Although the bill of lading for the package indicated that it contained electronic equipment, the package in fact contained between six and seven pounds of marijuana.  Defendant, who worked for a shipping company, denied knowing that marijuana was in the package.

On appeal, defendant contends: (1) the trial court erred by admitting evidence that defendant had previously hand-delivered three other packages to Securematics, one of which also contained marijuana; (2) the trial court erred by instructing the jury that it could consider the evidence of his three prior hand-deliveries to show intent, knowledge, identity, and common scheme or plan; (3) his trial counsel was ineffective for failing to offer a stipulation that defendant was the person who hand-delivered the fourth package; (4) his trial counsel was ineffective for failing to bring a suppression motion; and (5) there was cumulative prejudice. For reasons that we will explain, we will affirm the judgment.

## II.    BACKGROUND

### A.    *Background Regarding Securematics*

Securematics is a company that distributes electronics products manufactured by Juniper, Dell, and other companies. Securematics distributes the products to various resellers. All of the resellers are pre-approved by the product manufacturers and are registered in the Securematics computer system.

When Securematics receives a product order from a reseller, the Securematics computer system generates a "ticket," which contains shipping instructions. The Securematics warehouse employees assemble the order. The order information is then transferred to a shipping company and a shipping label is generated.

The product manufacturers deliver their products to Securematics, where the products are scanned to capture serial numbers. The product boxes are then placed on pallets for delivery to the resellers by a shipping company such as UPS or Federal Express.

2

## B. *Defendant's Involvement With Shipping Brokerages*

Defendant was associated with two shipping brokerage companies: EXP Global Logistics (EXP Global) and Redwood Global Logistics (Redwood Global). Defendant was an independent contractor for EXP Global,[1] and he owned Redwood Global.

Around August of 2011, Sanjay Patel, the Securematics operations manager, asked Brian Vincik, the Securematics vice president and general manager, about using other shipping companies besides UPS and Federal Express. Patel wanted defendant to do the shipping on some of the bigger orders, because the bigger orders were not always ready by 4:30 or 4:45 p.m., which was the latest that UPS or Federal Express would do pickups, whereas defendant offered to arrange for a 6:00 p.m. pickup. However, Patel was not authorized to enter into contracts on behalf of Securematics.

By December of 2011, Securematics had begun shipping some products through EXP Global and Redwood Global. Although Patel testified that Vincik made the decision to use EXP Global and Redwood Global, Vincik testified that he told Patel to get approval before using other shipping companies, and there was no written contract with either EXP Global or Redwood Global. UPS and Federal Express remained the only shipping companies that had been approved by Securematics management.

## C. *The Four Unusual Hand-Delivered Packages*

When Vincik learned that Redwood Global and EXP Global had been brokering shipments for Securematics, he reviewed the shipping information for all of the packages sent through those companies. There were several unusual features about some of the packages sent through EXP Global: (1) the packages had been hand-delivered to the

---

[1] EXP Global was owned by Richard Ricks and his wife. Ricks met defendant when defendant owned a Landstar Trucking franchise. Around July of 2011, Ricks hired defendant as an independent contractor and advanced defendant money, which he planned to deduct from defendant's commissions. About 90 days later, Ricks advanced additional money to defendant, who said that he needed it because he was not generating business as quickly as he had hoped.

Securematics warehouse; (2) the deliveries and shipments had not been set up through the Securematics computer system; (3) the packages had been sent to a company that was not an authorized reseller of Securematics products; and (4) the packages were all smaller than most packages distributed by Securematics.

The unusual packages had been hand-delivered to Securematics on four different dates in late 2011: November 18, November 29, December 23, and December 30. The bills of lading showed that all four packages were ultimately supposed to be delivered to a company called Sideline Group, with a Texas address. Although the shipments were being billed through EXP Global, a company called Falcon Global Edge did the actual shipping.

Vincik was first alerted to the unusual packages being hand-delivered to Securematics in late December of 2011. At that time, the shipping and receiving employees at Securematics noticed that they were receiving "some strange packages." The packages were strange because they had been received through the main entrance of Securematics rather than through "the usual means." The packages were all associated with one account, which was being directly managed by Patel and Byron Godoy, an employee in the Securematics shipping/receiving department. All of the packages were hand-delivered by defendant, who always dealt directly with Godoy only.

When the third unusual package was hand-delivered on December 23, 2011, Onofre Salazar, another shipping/receiving employee, decided to open it to see what was inside. Godoy and Salazar both looked inside the package and saw layers of plastic bags, which contained marijuana, not computer equipment. Salazar and Godoy closed the package, which was picked up for delivery by Falcon Global Edge, then called their supervisor, Antonio Nuñez.

After learning about the third hand-delivered package, Nuñez informed Vincik. Vincik told Nuñez that if another unusual package was hand-delivered, Nuñez should set

4

the package aside and call him. On December 30, 2011, Nuñez called Vincik to report receiving a fourth unusual package. Vincik called the police.

### D. Investigation

On December 30, 2011, City of Santa Clara Police Sergeant Luis Martin went to Securematics and was shown the package that defendant had hand-delivered that day. Officer Michael Horn, a K-9 handler, was called in. After someone pointed out the suspicious package to him, Officer Horn placed it on the ground, lined up with four other similar-sized packages. He commanded his K-9 dog to sniff the packages in order. The dog's behavior changed when the dog reached the package defendant had hand-delivered. The dog began vigorously sniffing, pressed his nose down on the seam of the package, deeply inhaled the air from the package, and then sat down in the "passive alert" mode, signaling that he had smelled the odor of a controlled substance.

After the K-9 dog alerted to the package, Sergeant Martin applied for and obtained a search warrant. He then opened and searched the package, which contained heat-sealed bags of marijuana packaged in layers with coffee grounds. The gross weight of the package was 7.7 pounds, and the net weight of the marijuana was between six and seven pounds.

Sergeant Martin subsequently obtained a search warrant for defendant's residence. Inside a bedroom of the residence, which defendant shared with his girlfriend, police found defendant's identification card and his business card. In the same bedroom, police observed hundreds of higher-end women's garments hanging up as well as a lot of shoes stacked in the closet. Elsewhere in the residence, police found a box of vacuum-sealing bags as well as a number of small baggies. Under the lid of a barbeque outside the residence, police found 6.5 grams of marijuana.

Officer Jacob Thompson spoke to Patel, who acknowledged that defendant had hand-delivered the fourth box. Patel said defendant had previously hand-delivered "some tennis equipment to be shipped out." Patel showed the officer defendant's Facebook

page and an email he had received from defendant dated December 29, 2011. Patel's employment with Securematics was terminated in January of 2012.

Officer Thompson did some investigation into Sideline Group, but he was unable to locate such a business through an internet search. The address in Texas was associated with a shipping business similar to a Mailboxes, Etc. store. A bank statement associated with Redwood Global showed deposits of $26,922.19 and withdrawals of $31,578.39 in November of 2011.

### E. Expert Testimony

Officer Thompson testified as an expert in marijuana sales, the identification of marijuana, and sales versus personal use. According to him, 7.7 pounds of marijuana is "a large amount worth a significant amount of money." The total value would be at least $10,000 and could be up to $20,000.

Officer Thompson testified that in 2011, marijuana was more expensive outside of California. An ounce of marijuana would sell for about $350 in California, but in Texas, it would be about $90 more. In California, one pound of marijuana would cost about $2,000 to $3,000, while in Texas, one pound would cost about $3,000 to $4,000.

People use several different methods to mask the odor of marijuana when packaging it, including packing the marijuana in coffee grounds.

### F. Defendant's Testimony

Defendant testified that in 2011, he was both a "sales contractor" for EXP Global and the owner of Redwood Global. He negotiated with Patel to start doing business with Securematics, and he believed that EXP Global had been approved as a carrier for Securematics. There was no written contract because it was "a trial process."

Defendant would get shipment instructions from a customer, and he would email those instructions to Falcon Global. Falcon Global would then prepare a bill of lading.

Defendant admitted that he had hand-delivered packages to Securematics on three or four different occasions. He had obtained those packages from a Sideline Group

6

vendor located "somewhere in South San Jose," but he could not recall the address of the business or the name of the person he spoke to at the business.

Defendant claimed he had been able to verify the shipping address for Sideline Group via the Internet. Defendant also had a number of conversations with a contact person at Sideline Group named Michael, whose last name he could not remember. Michael would give defendant shipping instructions. Because the packages were small, defendant would pick them up with his own car in order to save costs. If the shipments had been larger, defendant would have sent a truck. Defendant hand-delivered the packages to Securematics because the Falcon Global trucks were already there.

Defendant claimed the vacuum-sealing bags found in his residence belonged to his girlfriend, who used them to store blankets and comforters. He claimed the Redwood Global bank account statement showed business expenses associated with entertaining potential customers. Defendant claimed he did not know there was marijuana in the packages he hand-delivered to Securematics on December 23 or December 30.

### G. Charges, Trial, and Sentence

Defendant was charged and convicted, by jury trial, of possession for sale of marijuana (Health & Saf. Code, § 11359) and transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)). The trial court sentenced defendant to a prison term of two years for the transportation count, and it stayed the possession for sale count.

### III.   DISCUSSION

### A. Admission of "Prior Acts" Evidence

Defendant contends the trial court erred by admitting evidence that before he hand-delivered the December 30, 2011 package to Securematics, he had previously hand-delivered the three other packages to Securematics. As explained below, the trial court found that the evidence was admissible for several purposes specified in Evidence Code section 1101, subdivision (b), but defendant contends the evidence was not admissible for

7

any purpose and that the error violated his state and federal rights to due process and a jury trial.

### 1. Proceedings Below

Several witnesses testified before defendant objected to the admission of the "prior acts" evidence. Vincik testified that four of the packages shipped through EXP Global were unusual, in that they were smaller than normal packages, they were hand-delivered to the Securematics warehouse, and they were shipped to a customer who was not an authorized reseller. Vincik also testified that Nuñez had notified him that a person was bringing in packages outside of the normal process, and that Nuñez had opened a package and saw what appeared to be "some kind of contraband."

Salazar testified about seeing unusual packages on December 23, 2011 and December 30, 2011, and about opening the package on December 23, 2011. Godoy testified that someone named "John," who he identified as defendant, had personally dropped off four unusual packages around December of 2011. Godoy testified about seeing the contents of the December 23, 2011 package.

Salazar's testimony resumed after Godoy testified. As he began describing the December 23, 2011 package, defendant objected on the basis of relevance and "character evidence." The trial court then held a conference out of the presence of the jury, noting that "a significant issue has been raised as to the admissibility of the prior instances of conduct by [defendant] in bringing packages over to the company and what was in the packages."

The prosecutor asserted that the "prior acts" evidence was admissible pursuant to Evidence Code section 1101, subdivision (b). She argued that the prior acts were admissible to show a "common plan or scheme."

Defendant's trial counsel expressed the concern that the prior acts not be used to show defendant's knowledge of what was inside the packages. She argued it would be "dangerous" to allow evidence of defendant's other three hand-deliveries without

8

evidence of what was inside the first two packages and without evidence that defendant knew marijuana was inside the third package.

The trial court noted that it understood that defendant's three prior hand-deliveries had been introduced "to establish a connection" between defendant and EXP Logistics and Securematics. The trial court was concerned "that the jurors might inappropriately infer" that the first two packages contained marijuana, "and there's no evidence of that." The trial court also expressed concern that the prosecutor was seeking to admit evidence of the third package to show defendant's knowledge that the fourth package contained marijuana. The prosecutor agreed, "That is my argument."

Both attorneys offered to provide the trial court with supplemental points and authorities. The trial court requested the parties submit letter briefs.

In arguing that defendant's three prior hand-deliveries were admissible to show his intent and knowledge as to the fourth package, the prosecutor's letter brief relied extensively on *People v. Ghebretensae* (2013) 222 Cal.App.4th 741 (*Ghebretensae*), in which this court held that "[p]rior incidents of possession of an illegal drug are relevant to prove the knowledge element" of the crime of possession of a controlled substance. (*Id.* at p. 754.) The prosecution also asserted that the evidence of defendant's prior hand-deliveries was admissible to show a common plan or scheme.

Defendant's letter brief noted that there was no dispute that defendant had dropped off the fourth package. Defendant argued that the evidence of the prior hand-delivered packages did not show that defendant knew the contents of the fourth hand-delivered package. Defendant also argued that the evidence did not establish enough similarities between the package deliveries to make the prior hand-deliveries admissible to show a common scheme or plan. Defendant further argued that the evidence should be excluded pursuant to Evidence Code section 352.

The trial court found that the evidence was admissible under Evidence Code section 1101, subdivision (b) to show intent, knowledge, and common scheme or plan.

9

The trial court further found that the "probative nature of that evidence outweighs the prejudicial aspect of it." The trial court ultimately instructed the jury that the "prior acts" evidence could be considered on the issues of identity, intent, motive, knowledge, plan or scheme, and credibility.

Following the trial court's ruling, Salazar continued testifying. He testified about seeing plastic bags inside the December 23 package, and he testified that defendant had hand-delivered that package. Godoy then returned to the stand, reiterating his prior testimony that defendant had hand-delivered four packages. Nuñez later testified about noticing four "strange packages," and he identified defendant as the person who had dropped off those packages.

During argument to the jury, the prosecutor discussed the evidence showing defendant's knowledge that the December 30 package contained contraband. The prosecutor described the circumstances as "suspect," noting that "Securematics is not a drop-off location for packages" and that even the employees had "quickly recognize[d] that something is not right." The prosecutor argued that it was significant that there was "not just one package," but four different packages, each of which was brought to Securematics under unusual circumstances, including the fact that none of the packages included any Securematics products.

### 2. Analysis

Evidence Code section 1101, subdivision (b), permits the admission of "evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .) other than his or her disposition to commit such an act."

As with other circumstantial evidence, the admissibility of evidence pursuant to Evidence Code section 1101, subdivision (b) "depends on the materiality of the fact sought to be proved, the tendency of the prior crime to prove the material fact, and the existence or absence of some other rule requiring exclusion. [Citation.]" (*People v.*

10

*Whisenhunt* (2008) 44 Cal.4th 174, 203.) "We review for abuse of discretion a trial court's rulings on the admissibility of evidence. [Citations.]" (*People v. Benavides* (2005) 35 Cal.4th 69, 90.)

Defendant asserts that the evidence of his three prior hand-deliveries was not relevant to any issue in dispute at trial. Defendant argues that the only disputed issue was his knowledge of what was in the December 30 package, and that the evidence of his prior hand-deliveries was irrelevant because there was no evidence that he knew what any of those other packages contained.

As an initial matter, we note that much of the challenged evidence was admitted *prior to* defendant's objection. As described above, before defendant's objection, Vincik had already described the four unusual hand-delivered packages, Salazar had described the December 23 and December 30 packages, and Godoy had identified defendant as the person who had hand-delivered the four unusual packages. The testimony admitted after the trial court's ruling on defendant's objection was similar: Salazar testified that defendant had hand-delivered the December 23 package; Godoy returned to the stand and again testified that defendant had hand-delivered four packages; and Nuñez testified about the four "strange packages" dropped off by defendant.

After defendant's objection, the trial court noted that evidence about the prior hand-deliveries had already been introduced "to establish a connection" between defendant and EXP Logistics and Securematics. The trial court's concern was whether the evidence could also provide a basis for the prosecutor to argue that defendant knew what was inside the December 30 package.

Because the "prior acts" evidence was admitted before defendant's objection, and defendant did not seek to strike it, the question here is not whether the evidence was properly admitted, but whether the trial court properly instructed the jury that the "prior acts" evidence could be considered for a purpose specified in Evidence Code section 1101, subdivision (b). As noted above, the trial court's instruction informed the

11

jury that it was permitted to consider the "prior acts" evidence for six purposes: identity, intent, motive, knowledge, plan or scheme, and credibility. The Attorney General argues that the trial court did not abuse its discretion by admitting the "prior acts" evidence for three of these purposes: intent, knowledge, and common plan or scheme.

We first consider whether the jury was properly instructed it could consider the "prior acts" evidence for the purpose of showing defendant's knowledge of what was in the December 30 package.

Defendant acknowledges that there is little California authority addressing whether prior acts can be admitted to show a defendant's knowledge of the presence of drugs. (Cf. *Ghebretensae, supra,* 222 Cal.App.4th at p. 754 [evidence of prior drug sale was relevant to show defendant's "knowledge of the character of the contraband as a controlled substance"].) Defendant discusses *People v. Torres* (1950) 98 Cal.App.2d 189 (*Torres*), in which the defendant was convicted of illegal possession of marijuana after a search of his car revealed four marijuana cigarettes underneath a blanket. (*Id.* at p. 190.) The defendant denied knowing that the marijuana was in the car, but at trial he admitted that marijuana had been found in his car on a previous occasion. The defendant also denied knowing about the presence of marijuana on the previous occasion. (*Id.* at p. 191.) On appeal, the *Torres* court found the prior incident "relevant to establish this defendant's knowledge of the presence of the marihuana cigarettes in the car." (*Id.* at p. 192.) The court held that the evidence "was a circumstance tending to show that he falsified in disclaiming knowledge of the presence of the marihuana [*sic*], and was relevant in disproving defendant's claim of lack of knowledge." (*Ibid.*)

In this case, the evidence of the prior hand-deliveries similarly permitted the jury to infer that defendant knew the December 30 package contained contraband. First, the December 23 package delivery was relevant to defendant's knowledge under the rationale of *Torres*. Defendant denied knowing that marijuana was in both the December 23 and December 30 packages. His delivery of a prior package containing

marijuana, even without direct evidence that he knew marijuana was in that package, tended to show that defendant was not truthful in denying knowledge of the presence of the marijuana on December 30, "and was relevant in disproving defendant's claim of lack of knowledge." (*Torres, supra,* 98 Cal.App.2d at p. 192.)

The first two hand-deliveries were also relevant circumstantial evidence tending to show defendant knew that contraband was in the December 30 package. The circumstances of the December 30 hand-delivery were very unusual, thereby creating an inference that defendant knew that the package contained contraband. As the prosecutor pointed out during closing argument, that inference was strengthened by the prior three hand-deliveries, which involved very similar unusual circumstances. The fact that defendant had repeatedly hand-delivered unusually small packages to Securematics, from a vendor who was not a Securematics supplier, for delivery to a company that was not a Securematics reseller, made it more likely that defendant knew the December 30 package contained contraband. Indeed, as the Attorney General points out, "it was the similarity between the delivery of the first three packages and the fourth package that caused the police to be contacted"—in other words, even to the Securematics employees, the repeated unusual circumstances of the hand-deliveries suggested the presence of contraband in the packages. Thus, the jury could reasonably infer, based on the unusual circumstances of all the hand-deliveries, that defendant knew the fourth package contained contraband.

We conclude that the trial court did not err by instructing the jury that it could consider the prior hand-deliveries to show defendant's knowledge. We need not consider defendant's argument that the trial court erred by also instructing the jury that it could consider the "prior acts" evidence for identity, intent, motive, or common plan or scheme. As defendant points out, these issues were not in dispute and as such, the evidence was "merely cumulative" as to those issues. The trial court's instruction that the jury could consider the evidence for those purposes thus could not have "adversely affected the

13

verdict," and any error "was harmless under even the most rigorous standard of prejudice. [Citations.]" (*People v. Johnson* (2010) 185 Cal.App.4th 520, 542, citing *Chapman v. California* (1967) 386 U.S. 18, 24 & *People v. Watson* (1956) 46 Cal.2d 818, 836.)

### B.      Instruction on "Prior Acts" Evidence

Defendant contends the instruction on the "prior acts" evidence was deficient because it did not inform the jury that it could infer knowledge from the prior hand-deliveries only if the jury first found that defendant knew the prior packages contained marijuana. He contends that the error violated his state and federal rights to due process and a jury trial.

The challenged instruction, a modified version of CALCRIM No. 375, provided as follows: "The People presented evidence of other acts by the defendant, namely, delivery of three prior packages to Securematics by the defendant, and that the contents of the December 23rd, 2011, package contained marijuana. You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed these acts. . . . [¶] . . . [¶]"

"If you decide that the defendant committed these acts, you may, but are not required to, consider that evidence for the limited purpose of deciding whether or not the defendant was the person who committed the offenses alleged in this case; the defendant acted with the intent to transport marijuana or to possess marijuana for the purpose of sales; the defendant had a motive to commit the offenses alleged in this case; *the defendant knew that the package on December 30th, 2011, contained contraband*; the defendant had a plan or scheme to commit the offenses alleged in this case.

"Do not consider this evidence for any other purpose except for the purposes identified above as well [as] to determine the defendant's credibility. Do not conclude from this evidence that the defendant has a bad character or is disposed to commit a crime.

14

"If you conclude that the defendant committed these acts, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of [the] charges in this case. The People must still prove each charge beyond a reasonable doubt." (Italics added.)

Defendant acknowledges that he did not object to the above instruction or request it be modified, but he argues that his claim on appeal is not forfeited because it affected his substantial rights (see Pen. Code, § 1259) and because the trial court had a sua sponte duty to give a correct instruction on the use of "prior acts" evidence. (See *People v. Castillo* (1997) 16 Cal.4th 1009, 1015 [trial court has a duty to give legally correct instructions].) We will consider the merits of defendant's claim.

Defendant relies on *People v. Simon* (1986) 184 Cal.App.3d 125 (*Simon*). In that case, the defendant was convicted of second degree murder with the use of a firearm after he shot and killed a man at his girlfriend's apartment after the man pointed a gun at him. (*Id.* at p. 127.) At trial, Simon claimed the killing was in self-defense. The prosecution introduced evidence that Simon had previously pulled a gun on a man named Ashton. The prior incident also occurred at Simon's girlfriend's apartment. (*Id.* at pp. 128-129.) Simon and his girlfriend both testified that Ashton had been selling drugs to defendant's girlfriend. However, Simon's girlfriend had previously told police she was having an affair with Ashton. (*Id.* at p. 129.)

On appeal, Simon argued that the prior assault was irrelevant because it was "motivated by his desire to keep [his girlfriend] away from drug dealers." (*Simon, supra,* 184 Cal.App.3d at p. 130.) The *Simon* court noted that there was no evidence that the victim of the homicide had been selling drugs to Simon's girlfriend and that if the assault on Ashton was in fact motivated by Simon's desire to keep his girlfriend away from drug dealers, the prior incident would not be relevant to prove any disputed factual issue in the homicide case. (*Ibid.*) On the other hand, if the assault on Ashton was motivated by jealousy, it would be sufficiently similar to the charged offense and be

15

admissible on the issue of self-defense.  Thus, the court held, Simon's motive in assaulting Ashton was a critical preliminary factual issue which should have been resolved before the Ashton incident was deemed admissible.  (*Id.* at pp. 130-131.)  The *Simon* court noted that the limiting instruction given to the jury "failed to acknowledge the disputed factual issue, thereby suggesting that evidence of the Ashton incident was probative of Simon's intent and motive regardless of which version of the facts the jury decided to accept."  (*Id.* at p. 131.)

This court distinguished and declined to follow *Simon* in a case involving possession of child pornography, *People v. Garelick* (2008) 161 Cal.App.4th 1107 (*Garelick*).  The "direct evidence" supporting the possession of child pornography charge consisted of four images found on the hard drive of Garelick's computer.  (*Id.* at pp. 1112-1113.)  Numeous "other 'questionable' images that were indicative of child pornography" were also found on Garelick's computer, and 118 of the images were admitted into evidence pursuant to Evidence Code section 1101, subdivision (b).  (*Garelick, supra,* at p. 1113.)  The trial court instructed the jury on the limited purpose for which the additional images could be considered, pursuant to CALCRIM No. 375.  (*Garelick, supra,* at p. 1113.)  One of the purposes for which the jury was permitted to consider the additional images was Garelick's knowledge of the existence of child pornography on his computer hard drive.  (*Id.* at p. 1114.)

On appeal, Garelick argued—based on the *Simon* case—that the trial court should have modified CALCRIM No. 375 to tell the jury it could not consider the additional images unless it first found that Garelick possessed or controlled the images "with the 'required specific intent or mental state' " required by the possession of child pornography statute.  (*Garelick, supra,* 161 Cal.App.4th at p. 1115.)  In rejecting that claim, this court explained that the additional images were relevant even if there was no evidence that Garelick possessed the images "with the specific intent or mental state to possess child pornography."  (*Id.* at p. 1116.)  The additional images were relevant on

16

their own, to establish Garelick's "knowledge of their existence on his computer," because of the "volume of material and the fact that those images were found in several different locations on Garelick's computer." (*Ibid.*)

In this case, as discussed in the previous section, the jury could properly consider the evidence of defendant's prior hand-deliveries when determining whether defendant knew the December 30 package contained contraband. The December 23 hand-delivery was relevant to defendant's knowledge because he denied knowing that marijuana was in that package, which tended to show that defendant was not truthful in denying knowledge of the presence of the marijuana on December 30. (See *Torres, supra,* 98 Cal.App.2d at p. 192.) The first two hand-deliveries were relevant to defendant's knowledge because they occurred under the same unusual circumstances as the December 23 and 30 hand-deliveries, which increased the probability that they also contained contraband and that defendant knew the December 30 package contained contraband. As in *Garelick*, a number of similar hand-deliveries was relevant to the jury's determination of defendant's knowledge of the presence of marijuana on December 30.

## C.      *Ineffective Assistance of Counsel – "Other Acts" Evidence*

Defendant contends his trial counsel was ineffective for failing to stipulate that defendant was the person who had delivered the December 30 package, for failing to properly object to the "prior acts" evidence, and for failing to object to the language the trial court used in CALCRIM No. 375.

" 'In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the

17

manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Citation.]' [Citation.]" (*People v. Lopez* (2008) 42 Cal.4th 960, 966; see *Strickland v. Washington* (1984) 466 U.S. 668, 690, 694.)

Defendant's trial counsel was not ineffective for failing to stipulate that defendant was the person who had hand-delivered the December 30 package. Defendant acknowledges that the prosecution would not have been obligated to accept a stipulation (see *People v. Scott* (2011) 52 Cal.4th 452, 471), but he nevertheless claims that the trial court's "admissibility analysis would have been different" if his trial counsel had offered such a stipulation. However, a stipulation to defendant's identity as the person who had delivered the December 30 package would not have changed the trial court's analysis of whether the prior hand-deliveries were relevant for other issues, including knowledge. As explained above, the trial court did not err by determining that the first three hand-deliveries were admissible to show defendant's knowledge. Defendant's trial counsel was not ineffective for failing to offer the suggested stipulation because there is no reasonable probability that the stipulation would have changed the trial court's determination regarding admissibility of the "prior acts" evidence for knowledge.

We need not address defendant's claim that his trial counsel was ineffective for failing to properly object to the "prior acts" evidence and for failing to object to the language the trial court used in CALCRIM No. 375. We have not found that any of defendant's appellate challenges to the evidence or jury instruction were forfeited; we have addressed both issues and concluded there was no error.

18

### D.   Ineffective Assistance of Counsel – Failure to File Suppression Motion

Defendant contends his trial counsel was ineffective for failing to file a motion to suppress.  Defendant argues that "the manner in which the canine search was conducted constituted a search requiring a warrant, and was without probable cause."

"When a defendant claims ineffective assistance of counsel based on his [or her] counsel's failure to bring a motion to suppress evidence on Fourth Amendment grounds, the defendant is required to show that the Fourth Amendment claim had merit. [Citations.]" (*People v. Frye* (1998) 18 Cal.4th 894, 989, disapproved of on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

We first address defendant's contention that he had "standing" to contest the search of the December 30 package.  In order to have standing, defendant, rather than someone else, must have had a reasonable expectation of privacy in the package.  (See *People v. Ayala* (2000) 23 Cal.4th 225, 254, fn. 3.)  A person can have a Fourth Amendment interest in "letters and other sealed packages in shipment.  [Citations.]" (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1224.)

The Attorney General contends that defendant did not have a reasonable expectation of privacy in the December 30 package because defendant disclaimed ownership of the package and claimed he was "a mere courier" of the package. Defendant contends that he had standing based on the "formal arrangement" he had as the person who had been "entrusted with care of the package."  He relies primarily on *United States v. Johns* (9th Cir. 1983) 707 F.2d 1093, 1099 (*Johns*), reversed on other grounds by *United States v. Johns* (1985) 469 U.S. 478, 488.  In *Johns*, the Ninth Circuit held that two airplane pilots had standing to contest the seizure of boxes and bags containing marijuana.  The pilots had dropped off the marijuana at an airstrip, where the boxes and bags had been placed in trucks.  The Ninth Circuit upheld the lower court's finding that the pilots "shared a bailor/bailee relationship" with the defendants who had

been arrested with the trucks, "based on their formalized arrangement . . . for the transportation of the contraband." (*Johns, supra,* at p. 1100.)

The Ninth Circuit later repudiated the " 'formalized arrangement' " rationale of *Johns.* (*United States v. Padilla* (9th Cir. 1997) 111 F.3d 685, 687 (*Padilla*).) In *Padilla,* the police found 560 pounds of cocaine in the trunk of a car. (*Id.* at p. 686.) The defendants had not been driving the car, nor did they own the car, but they claimed standing to challenge the search of the car based on their claim that they had "formed and operated a cocaine transportation organization for hire." (*Ibid*.) The defendants had hired someone to drive the "load car," and they had "directed [the driver] on the route he should follow and his ultimate destination." (*Ibid.*) The Ninth Circuit ultimately held that the defendants did not have standing, rejecting the defendants' claim that they had demonstrated a reasonable expectation of privacy. (*Id*. at pp. 687-688.)

The Ninth Circuit explained that its prior decision in *Johns* did not stand for the proposition that "a bailment relationship alone could create a property interest protected by the Fourth Amendment." (*Padilla, supra,* 111 F.3d at p. 687.) Rather, the *Johns* opinion had found that the pilots had standing based on " 'their formalized arrangement with the other five defendants for the transportation of the contraband.' [Citation.]" (*Ibid*.) That holding, however, "was premised on the very coconspirator exception rejected by the Supreme Court" in *United States v. Padilla* (1993) 508 U.S. 77, 78. (*Padilla, supra,* at p. 687.)

Defendant also cites *United States v. Taketa* (9th Cir. 1991) 923 F.2d 665 (*Taketa*) for the proposition that a "formal arrangement" can give rise to a reasonable expectation of privacy in a third party's property. However, *Taketa* relied on the subsequently-rejected " 'coconspirator exception' " and the subsequently-repudiated "formalized arrangement" rationale of the *Johns* case. (*Id.* at p. 671.)

In the instant case, defendant asserted no ownership interest in the December 30 package. His claim of standing is based solely on his asserted formalized arrangement to

20

deliver the package, but as explained above, that theory is no longer recognized as a valid basis for standing. (*Padilla, supra,* 111 F.3d at p. 687.)

We conclude that defendant could not have demonstrated that he had a reasonable expectation of privacy in the December 30 package, and therefore that his trial counsel was not ineffective for failing to file a motion to suppress. We need not address defendant's contention that the police conducted a search when Officer Horn moved the package to the ground and commanded his K-9 dog to sniff the package, which resulted in the K-9 dog pressing his nose on the seam of the package.

### E.     *Cumulative Prejudice*

Defendant contends that even if "none of the errors individually compel reversal" of his convictions, reversal is required due to the "cumulative prejudice" of the two asserted trial errors. We have concluded that the trial court did not err by admitting the evidence of defendant's first three hand-deliveries to show knowledge and that the trial court did not err by failing to instruct the jury that it had to find defendant knew there was marijuana in the first three packages before considering those hand-deliveries to show knowledge. Thus, there is no prejudice to cumulate.

## IV.     DISPOSITION

The judgment is affirmed.

21

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MIHARA, J.

_____
GROVER, J.

*People v. Bouapha*
**H041069**